.WILSON *v.* STATE.

Opinion delivered February 18, 1924.

1. ASSAULT AND BATTERY—DEADLY WEAPON.—The shoes which a person wears as a part .of his ordinary apparel are not "deadly weapons," within the meaning of the statute relative to aggravated assault.

2. ASSAULT AND BATTERY—REDUCTION OF PUNISHMENT.____In a prosecution for mayhem, a verdict finding accused guilty of an aggravated assault and assessing his punishment at a fine of $150 and imprisonment for 60 days, will be modified by remitting the imprisonment where there was no evidence that the battery was committed with a deadly weapon.

Appeal from Johnson Circuit Court; *J. T. Bullock,* Judge; modified.

*G. O. Patterson,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter, Wm. T. Hammock, Darden Moose* and *J. S. Abercrombie,* assistants, for appellee.

WOOD, J. The appellant was indicted by the grand jury of Johnson County for the crime of mayhem, as follows:

"The said Oscar Wilson, in the county and State aforesaid, on the 5th day of July, 1923, did wilfully, unlawfully, knowingly, maliciously, feloniously and of his malice aforethought and with premeditation, commit an assault upon one Dr. J. L. Post, and the ribs and nose of said Dr. J. L. Post did then and there break and disable * * * by striking, beating and stamping, with the unlawful and felonious intent then and there to disable and maim the said Dr. J. L. Post," etc.

There was testimony for the State tending to prove that appellant came up behind Dr. Post and struck him behind the ear, knocked him down, kicked him in the face and in the ribs, broke his nose and some of his ribs, and inflicted severe injuries on the side of his head and ear. Witnesses for the State testified that they did not see appellant with any weapon. He inflicted the injuries by striking and kicking Dr. Post.

The appellant testified that he met Dr. Post face to face, and Post rubbed against appellant with his shoulder, and at the same time shoved appellant and struck at him. Appellant then knocked Post down and hit him three or four licks, and some one walked up and told appellant not to hit him any more, and about that time Post raised up on his left hand and went with his right hand as though he was going into his pocket, and, when he did that, appellant kicked his hand. After appellant knocked Post down he desisted from further attack until Post turned over and reached for his hip pocket. Appellant had no weapon of any kind. He hit Post with his fist.

The court declared the law of the case in instructions to which the appellant here offers no objection. The jury returned a verdict finding appellant guilty of an aggravated assault, and assessed his punishment at a fine of $150 and sixty days in jail. Judgment was entered against appellant in accordance with the verdict, from which is this appeal.

The only contention of appellant is that the evidence was not sufficient to sustain the verdict. The undisputed testimony tends to show that the appellant inflicted the injuries by striking and beating Post with his fist, and by kicking him in the face and side. Appellant contends that this testimony does not sustain the verdict finding the appellant guilty of an aggravated assault, for the reason that no deadly weapon was used. Appellant is correct in this contention.

In the case of *Warren* v. *State*, 88 Ark. 322, the proof tended to show that Warren kicked a man by the name of Tardy while he was down, and a physician

who examined the wounds testified that one or two of the wounds could have been caused by a man's shoe. Warren was convicted of an aggravated assault, and his punishment assessed at $100 and imprisonment for one hour in jail. The court said: "There was no evidence to show that Warren assaulted Tardy with a deadly weapon, instrument, or other thing, and he therefore could not have been legally convicted of an aggravated assault. The evidence, however, was sufficient to convict Warren of an assault." That case rules this, and shows that, where one attacks another, using no other weapon than by striking with his fists, or kicking, he does not use a deadly weapon in the sense of the statute. The shoes which a man wears as part of his ordinary apparel, in the common acceptation of that term, are not deadly weapons within the meaning of the statute. At least, such is the interpretation of the above case. Evidently the court, in the above case, thought that the statute was leveled against assaults made by deadly weapons other than a man's feet or hands, or by the ordinary wearing apparel—that is, by such deadly weapon, instrument, or other thing as, in the ordinary acceptation, is calculated, or likely, to produce death or great bodily injury. Shoes, as articles of ordinary wearing apparel, according to the decision of *Warren* v. *State, supra,* do not come within that category. A powerful man—a Dempsey or Firpo— might kill one by striking with the fist or kicking with the foot, but a great bodily injury by this means would not be an assault with a deadly weapon, instrument, or other thing, in the sense of the aggravated assault statute. The indictment in this case, however, was sufficient to charge an assault and battery, the punishment for which is by fine in any sum not exceeding $200. The testimony was sufficient to justify a verdict finding appellant guilty of assault and battery and punishing him in the sum of $150 for that offense. The judgment therefore will be modified by remitting the imprisonment adjudged against the appellant, and, as thus modified, the judgment is affirmed.

SMITH, J. (dissenting). It is true appellant testified, and offered some testimony in corroboration of his own, that he struck Dr. Post in necessary self-defense, and did not kick him until the doctor attempted to draw a pistol. But, inasmuch as the jury did not believe this testimony, and found appellant guilty of an aggravated assault, we should, in accordance with the well-known rule which governs in such circumstances, test the sufficiency of the evidence to support the verdict by a consideration of the testimony which tends to support it.

Here the testimony of Dr. Post and that of a number of witnesses—men, women and a boy—was to the following effect: Appellant walked up behind Dr. Post and, without warning, struck and, while the doctor was lying helpless and unconscious, appellant jumped on the prostrate body and commenced kicking with his heel, and broke four of the doctor's ribs. Two women and some men, prompted by the dictates of humanity, seized hold of appellant and pulled him away, but he struggled loose from them and returned to his helpless victim, saying, as he did so, that the first round was not over, and resumed kicking him. With one kick he broke the bones of the doctor's nose and flattened it out on his face, and with another kick he burst the doctor's eardrum. Dr. Post testified that he did not know who hit him, as the first blow rendered him unconscious, and that he did not fully regain consciousness for three or four days later, when he found himself in the hospital at Fort Smith. He first knew that his nose was broken by applying his hand to it, thus dislocating some bones, which his act required to be reset. That he was in the hospital for sixteen days, and was disabled at his home for two weeks additional, and that it was six weeks before he was able to resume the active practice of his profession as a physician. He further testified that he had lost his hearing in the injured ear, and that one of his ribs had never healed, and still caused him pain.

This testimony may not be true, but this was, of course, a question for the jury, and, if it is true, who can

say that appellant might not actually have kicked or stamped his victim to death before he had spent his fury or had exhausted himself?

It is said in the majority opinion that the case of *Warren* v. *State,* 88 Ark. 322, affords the authority and imposes upon us the duty of holding that this testimony is not legally sufficient to support a conviction for an aggravated assault.

I shall not attempt to differentiate this case on the facts from the Warren case—which I think might be done—but content myself with saying that; if such is the purport of that case, it is wrong, and should be overruled, and we will never be afforded a better opportunity to overrule it, or at least to qualify it, than is now afforded. No rule of property is involved, and a decision which renders it impossible to mete out punishment in some measure commensurate with such an assault as the testimony recites shows was committed by appellant should not be permitted to stand.

This result is arrived at because a man's shoe is a part of his wearing apparel, and cannot therefore be called a deadly weapon. But the law does not read that an aggravated assault can be committed only with a deadly weapon. The statute reads as follows: "If any person assault another with a deadly weapon, instrument or other thing, with an intent to inflict upon the person of another a bodily injury, where no considerable provocation appears, or where the circumstances of the assault show an abandoned and malignant disposition, he shall be adjudged guilty of a misdemeanor, and, on conviction, shall be fined in any sum not less than fifty nor exceeding one thousand dollars, and imprisoned not exceeding one year." Section 2334, C. & M. Digest.

Certainly this testimony lacks no element of being an aggravated assault except that it was not committed with a deadly weapon. According to this testimony, there was an intent to inflict a bodily injury upon the person of another, no considerable provocation appeared, and the

circumstances of the assault showed an abandoned and malignant disposition.

But, as appears from the statute which I have quoted, aggravated assaults are not limited to those only which are committed with a deadly weapon. They may be committed with a deadly weapon, instrument, or other thing. It may be conceded that the rule of *ejusdem generis* applies, and that, in its application, the words, "instrument or other thing," must be construed to mean some article or object which could be and was used as a weapon. To give these words, "instrument or other thing," less meaning would be to deprive them of any meaning. These words should therefore be construed to mean some object or article which, although not a weapon, was one which could be and was used as such. How much more injury could be inflicted with knucks on one's hands than with the toe and heel of one's shoe or boot? ·

The use of a deadly weapon ordinarily indicates that the user had a purpose to inflict a bodily injury, because the weapon was intended for that purpose and had no other use, but no court has ever held, so far as I am advised, that one cannot be guilty of murder even unless he used some weapon designed to produce death in the commission of the homicide. Death or bodily injury can be inflicted not only with weapons but with an infinite number of "instruments or other things," when properly used to accomplish that purpose. This is a matter of such common observation that the citation of any of the numerous authorities so holding is unnecessary, but, as typical of many other cases, I quote from the decision of the Supreme Court of Kansas in the case of *State* v. *Bloom,* 136 Pac. 951, the following statement of the law: "The definition given in 30 Am. & Eng. Enc. Law, 443, and in 2 Words and Phrases Judicially Defined, 1828, 13 Cyc. 257, and some other law writers, of a 'dangerous weapon,' being taken from the decisions of various courts, is one calculated or designed to inflict death or great bodily harm, or, by the manner in which it is used, is likely to produce death or great bodily

harm. Some courts, also, give practically the same definition to the word 'weapon.' All of the courts, however, recognize that a weapon may be dangerous from the very design of its make, as a gun or a sword, while any object that may be used to inflict injury upon another, offensively or defensively, may be a dangerous weapon in the manner in which it is used. For instance, one authority (*State* v. *Norwood,* 115 N. C. 789, 20 S. E. 712, 44 Am. St. Rep. 498) holds that a pin thrust down the throat of an infant, causing death, constitutes a killing with a deadly weapon. It is said that where a weapon is in itself a dangerous weapon, it is province of the court to so tell a jury in a criminal trial, whereas, if the weapon is or is not dangerous according to the manner of its use, it is a question for the jury. It is evident that our Legislature, in defining the two crimes, wherein practically the only distinction is that the killing in the one should be by a *dangerous* weapon and in the other by a weapon, recognized the distinction that in one case the weapon should be dangerous in itself and in the other that it became dangerous only as used. The manner of the use is clearly to be determined as a fact by the jury.''

With all deference to my associates, who probably feel that the rule of *stare decisis* binds them, I insist that, if the Warren case affords authority for the holding in the instant case, it is so fundamentally unsound that it should be overruled, as it involves no rule of property, and I submit that the rule of *stare decisis* does not require us to follow a previous decision which contravenes ordinary principles of justice and stands as an impediment in affording the citizens of the State adequate protection from assault of this character.

I therefore dissent.