JOHN HENRY BEAN v. STATE.

No. A-10167.    June 9, 1943.

(138 P. 2d 563.)

Cunningham & Clark, of Tishomingo, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant, John Henry Bean, was charged in the district court of Johnston county with the crime of assault with intent to kill, was tried and convicted of the lesser offense of assault with a dangerous weapon. The verdict of the jury was for a term of five years in the State Penitentiary with a recommendation that the trial court suspend the execution of the sentence. Notwithstanding the verdict of the jury, the trial court erroneously sentenced the defendant to a term of four years in the State Penitentiary.

Dee Smith, the complaining witness, was city marshal of the town of Ravia. According to his testimony he was notified about dark on January 13, 1941, that the defendant and one Fell Mayes were drunk in the town of Ravia. He saw them passing in an automobile and pursued them in his car, overtaking them about one-half mile south of Ravia. He ordered the defendant into his car and directed the Mayes boy to follow him back to town in the

car of the defendant. When the witness started to get into his car, the defendant, who was sitting in the front seat of complaining witness's car, hit him with a car crank and continued to beat upon him until he fell to the ground. He laid on the ground ten or fifteen minutes and then drove back to Ravia and called the sheriff and a doctor.

The doctor testified that he examined complainant the night of January 13, 1941, about 7 o'clock p. m.; that he had several contusions and lacerations about the face and his face was also covered with blood. As to what caused the wounds, the doctor testified:

"Q. What would you say caused those wounds, Doctor? A. A blow of some kind, it was not a knife, it could have been a blunt instrument or possibly a fist or ring, I would not say what it was. * * * Q. Were his eyes swollen practically to? A. Yes, sir. Q. You said he might have received these injuries with a fist, take an ordinary fist and hit a man with it, do you think it would cause those gashes and cause such injuries as you found on this man's person, his face and head? A. Possible, maybe."

There were no fractures.

The other witnesses for the state testified as to defendant's condition which corroborated the testimony of the doctor.

The sheriff further testified that after he was notified by the complainant as to what occurred, he started after the defendant and found him eight or ten miles from Ravia near Petty John Springs. That defendant admitted striking the officer but denied hitting him with a car crank, claiming that he merely struck him with his fists. The defendant was a 20-year-old Indian boy.

On behalf of the defendant, his testimony consisted of proof that he was not intoxicated as alleged by the

state, and some witnesses testified that after his arrest they saw defendant's hands and they were swollen and bruised.

In his own behalf the defendant testified that he had supper in a cafe at Ravia and then started out of town. That after they had driven about a mile from Ravia he became sick and they drove off the road and parked and he got out of the car and was leaning up against a big tree. About that time the complainant Smith arrived and said "Let's go." That he did not know Smith was the law and when Smith started off with him he struck Smith with his fist and they had a scuffle and he continued to beat on Smith with his fists until he fell. That he was a professional boxer, having boxed when he was in school at the Murray School of Agriculture, later boxing two years in Mexico and a year at Ardmore. That he never did have anything in his hands when he was striking Smith but only used his fists. That after the fight had ended he got a wire off the fence and the complainant Smith took his automobile and pulled their car from a ditch where they had become stuck when they tried to turn around. That afer the fight he returned to Ravia, went to his mother-in-law's, washed and had started to a dance when he was overtaken by the sheriff at Petty John Springs.

The first assignment of error is that the county attorney committed error in his cross-examination of the defendant by asking him questions about irrelevant matters solely for the purpose of creating prejudice in the minds of the jury against defendant.

The county attorney asked the defendant many questions about where he had been the night before the alleged assault. These questions established the fact that the

defendant had been drinking and had been out, with a girl who lived in Ravia, all night. Sometime during that night, the exact hour of which was not known by defendant except that it was after midnight, he had married the girl but he had never lived with her after he had brought her to her home in Ravia the next morning, which was the morning preceding the alleged assault that night. After asking these questions the county attorney, over the objection and exception of defendant, was allowed to ask the following questions:

"Q. (By Mr. Draper, County Attorney) I will ask you if it is not a fact on the night of the 12th day of April, 1941, last Saturday night, that you and a young lady by the name of Edna Jo Gover got married at Denison, Texas? A. No. (Objections and exceptions.) Q. What is your answer? A. No. Q. Isn't it a fact you went out to Mr. Gover's house last evening and went up to the house and knocked on the door, you wanted to see your wife, and told Mr. and Mrs. Gover you were Edna Jo's husband? A. Yes, sir. Q. That is a fact, isn't it? A. Yes, sir. Q. And they asked you to see the license? A. Yes, sir. Q. And you said you did not have them? A. That is right. Q. But you are not married to the girl? A. No, we intended to go to Denison and she said come there so she could go. Q. How long were you with her before you brought her home? By the Court: That is immaterial. Q. You did lie to Mr. and Mrs. Gover last night? A. Yes, sir, I did."

The date of the alleged assault was January 13, 1941. The trial began on April 16, 1941, just four days after the date of the alleged occurrence with the young lady at Denison, Texas, as fixed by the questions of the county attorney.

All these questions concerning the alleged marital affairs of defendant were wholly irrelevant to the charge

upon which he was being tried and could serve no purpose except to create prejudice in the minds of the jury against the defendant.

No objection was interposed on behalf of the defendant to the questions of the county attorney concerning the defendant's activities with Charlene Wortham the night preceding the alleged assault. However, counsel did interpose objections to the questions concerning his relationship with Edna Jo Gover four months subsequent to the alleged assault and allegedly just four days before the commencement of the trial.

In Pressley et al. v. State, 71 Okla. Cr. 436, 112 P. 2d 809, 810, we held:

"The character of the defendant cannot be impeached or attacked by the state unless he puts his character in issue by introducing evidence of good character."

In the body of the opinion this court quoted from the case of Jones v. State, 20 Okla. Cr. 154, 201 P. 664, as follows:

"It is not admissible to show the bad character of the defendant until after the defendant himself puts his good character in issue, and then only by showing his general reputation, and not by particular acts. Evidence of other criminal acts not in issue in the case should be excluded; such testimony has a tendency to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the charge at issue, or to take proof of it as justifying the defendant's condemnation, irrespective of his guilt of the crime for which he is being tried. Moreover, the use of alleged particular acts, ranging over the entire period of the defendant's life, makes it impossible for him to prepare to refute the charges, any or all of which may be mere fabrications. The rule as above stated has received the

judicial sanction of the courts of this country for more than a century. Underhill on Evidence, § 82; 1 Wigmore on Evidence, 233; 10 R.C.L. 953; Porter v. State, 8 Okla. Cr. 64, 126 P. 699; Corliss v. State, 12 Okla. Cr. 526, 159 P. 1015."

In the early case of Watson v. State, 7 Okla. Cr. 590, 124 P. 1101, it is held:

"The repeated asking of incompetent questions, which clearly have for their purpose the intimation of something to the jury that is either not true or not capable of being proven if true, is wrong, and such conduct of counsel is not cured because the court sustains objections to the questions.

"In jury trials, incalculable harm is often done by counsel in asking known incompetent questions in the hearing of the jury and thereby forcing the adverse party to object to them also in the hearing of the jury, which manifests a fear of the incompetent questions, and gives emphasis to the harmful matter they are supposed to contain."

We think the county attorney exceeded the bounds of legal propriety in his cross-examination of defendant in regards to the extraneous matters hereinbefore noted.

It is next insisted that the court committed error in his instructions to the jury. The instructions are not numbered. They should have been so that counsel for the defendant could properly have made his objection to the specific instruction in question. The instructions are all joined together, but at the conclusion we find the statement: "The defendant excepts to the instructions of the court as above given."

The defendant's objection is directed to that part of the instructions which reads:

"You are instructed, Gentlemen of the Jury, further in this case that if after a full consideration of all of the testimony, and these instructions you entertain a reasonable doubt as to the guilt of the defendant, John Henry Bean, of the offense of attempt to kill as charged in the information herein, then it will be your duty to determine whether he is guilty of assault with a dangerous weapon with intent to do bodily harm, as the same has been defined to you, and in this connection you are instructed that if you should find from all the facts and circumstances admitted in evidence for your consideration, and beyond a reasonable doubt, that on or about the 13 day of January, 1941, the said defendant, with the intent to do bodily harm to the said Dee Smith and without justifiable or excusable cause committed an assault upon the person of the said Dee Smith with any sharp or dangerous weapon, or by any other means whatever with intent to injure the said Dee Smith, although without intent to kill him, or to commit a felony, then and in that event it will be your duty to return a verdict of guilty against the defendant, John Henry Bean, for assault with a dangerous weapon with intent to do bodily harm. On the other hand, unless you are so satisfied from all of the evidence and circumstances and beyond a reasonable doubt, that the defendant did assault the said Dee Smith with a dangerous weapon with intent to do bodily harm then and in that event it will be your duty to return a verdict of not guilty."

The defense interposed in this case was that the defendant, if guilty at all, was guilty of nothing more than assault and battery. Under the proof of the defendant he did not strike the complainant with anything other than his fists, which, under the decisions of this court, would not constitute a dangerous weapon within the meaning of the statute.

The statute under which the above instruction was drawn and the one upon which the conviction herein is based provides:

"Every person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot at another, with any kind of firearm or air gun *or other means whatever,* with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in a county jail not exceeding one year." 21 O.S. 1941 § 645.

The quoted words "or other means whatever," which we have italicized in the above statute, clearly have reference to the second part of said statute which makes it unlawful to shoot or attempt to shoot at another with any kind of firearm or air gun, and has no reference at all to the first part of the statute which makes it unlawful to commit an assault with a sharp or dangerous weapon.

We find by an analysis of the above statute two classes of weapons are defined: first, a sharp or dangerous weapon; second, any kind of firearm or air gun or other means whatever, which, under the doctrine of ejusdem generis, included only other weapons of like kind and character as the firearms or air guns which are specifically mentioned.

In Ingram v. State, 51 Okla. Cr. 143, 3 P. 2d 736, 737, it is stated:

"Where words of general import and of specific and limited signification are followed by general words, the general words will be construed as embracing only such persons, places, and things as are of like kind or class to those designated by the specific words."

See, also, Ex parte Carson, 33 Okla. Cr. 198, 243 P. 260.

We have never been called upon to determine whether an ordinary human fist could ever be classified as a dangerous weapon. It certainly is not a dangerous weapon per se, and we have consistently held that if the weapon used in an alleged assault is not deadly per se in an information charging an alleged offense under 21 O.S. 1941 § 652, the information should allege facts showing a sufficient description of such weapon, the manner in which it was used, and the effect produced by the use thereof. Moody v. State, 11 Okla. Cr. 471, 148 P. 1055; Ponkilla v. State, 69 Okla. Cr. 31, 99 P. 2d 910.

When the court instructed the jury that if they found beyond a reasonable doubt that defendant committed an assault upon the person of the said Dee Smith with any sharp or dangerous weapon, or by any other means whatever, it would be their duty to find the defendant guilty of assault with a dangerous weapon with intent to do bodily harm, he was, in effect, advising them that they should find the defendant guilty if they had concluded that the defendant used nothing other than his fists. There is no other instruction which advises the jury that if they should find that the defendant and the complainant had a fist fight, as contended by the defendant, that he would be guilty of nothing more than assault and battery. We think the above instruction is fundamentally erroneous as authorizing a conviction for a felony on certain facts which, if defendant's story is true, would only justify a conviction for a misdemeanor.

There are other assignments of error particularly with reference to the question of newly discovered evidence which was set forth in the motion for a new trial, but because of the necessity for reversal of this case on account of the errors hereinabove discussed, it is not necessary that we discuss this contention as such evidence may be pro-

cured at the next trial. The other assignments of error are without merit.

Although the question is not raised, probably because it was advantageous to defendant, we call attention that there is no authority for a trial court to modify the verdict of a jury when pronouncing judgment. Only this court has a right to modify the sentence meted out to an accused. 22 O.S. 1941 §§ 926 and 1066.

The judgment of the district court of Johnston county is reversed and remanded for a new trial.

BAREFOOT, J., concurs. DOYLE, J., absent and not participating.