15939

STATE v. HARIOTT *ET AL.*
(42 S. É. (2d) 385)

*Messrs. C. T. Graydon* and *J. Bratton Davis,* of Columbia, for appellants, cite:

*Mr. T. Pou Taylor,* Solicitor, of Columbia, for Respondent.

April 18, 1947.

FISHBURNE, AJ.: The defendants, Elisha Hariott, Lisha Hariott, and William Hariott, were indicted for assault and battery of a high and aggravated nature. Upon trial the two first named were convicted as charged, and William Hariott was convicted of simple assault. They assign error upon various grounds.

The facts giving rise to this prosecution are as follows: In the afternoon of January 26, 1946, the prosecuting witness, Mr. K. S. Smith, was driving his automobile Eastward on Rutledge Avenue in Camden, South Carolina. Just ahead of him, and parked against the curb of the street was a car occupied, he said, by three negro brothers, who are the appellants in this case. As the Smith car approached, the appellant, Lisha Hariott, who was at the wheel of his car, commenced to back out from the curb, in consequence of which the two automobiles collided and stopped.

Immediately after the collision, Mr. Smith got out of his car, which had suffered only minor damage, walked over to the car occupied by appellants and said to Lisha Hariott, the driver: "Why in the hell don't you fellows look where you are going?" According to Smith, Lisha Hariott applied a vile epithet to him, whereupon Smith stepped closer and struck him in the mouth with his fist. Mr. Smith testified that after he had cursed and struck Lisha he was willing to let the matter drop. Being under the impression that the car occupied by the negroes had started to move off, he walked back to his automobile, but looking around saw Lisha and Elisha Hariott following him, cursing him in violent language and threatening to kill him. He reached in his automobile and secured his wrench and another iron weapon, and struck at Lisha, who dodged the blow. About this time, the third brother, William, according to Smith, threw his arms around him from behind; but this was not done by William until Smith attempted to strike Lisha. Smith said that while William held him, pinioning his arms, the other two defendants struck him in the face with their fists, but

he jerked his right arm loose and hit Lisha on the side of his head with the wrench. He stated that before the affray ended, William hit him on the back of the head with his fist. The negroes had no weapons of any kind, but the prosecuting witness said that when they were cursing and threatening him, one of them had his hand in his hip pocket as though to draw a weapon. The opposing parties were strangers to each other.

As a result of the fight, Mr. Smith received a bruise on the nose, causing it to bleed; his head was hurt from the blow on the back, and his hip was injured. Severe pain in the hip continued for five or six days. It appears from his testimony that he fell down, but the testimony does not show that he fell as the result of the struggle.

Although a crowd quickly gathered, and the negroes were promptly arrested and placed in jail, none of the other state's witnesses saw any blows pass. Their testimony is to the effect that when they arrived at the scene, the defendants, Elisha and Lisha, were trying to take the iron rod and the wrench from Mr. Smith, and one of them was indulging in vile and opprobrious language. Lisha Hariott was bleeding from the blow over the head, and Smith was bleeding from the blow on his nose or face.

The appellant, Lisha Hariott, the driver of the car, testified that when Mr. Smith came to his car and first spoke to him after the collision, demanding to know "why in the hell don't you fellows look where you are going?", he replied: "Well, I am not in the wrong, but if I am I will pay for the damage", upon which Smith struck him in the mouth. He then got out of the car and struck Smith one blow in the face with his fist; that thereafter he did not hit nor attempt to injure him, nor did his brother, Elisha, make any effort to do so. He was supported in this by Elisha, who was in the car with him. All of the appellants deny that William was present at any stage of the brawl. The only witness who said that he was there was Smith, the prosecuting witness.

The appellants, Lisha and Elisha, testified that they did not follow Smith; that the latter went to his car, secured the wrench, and made an attack upon Lisha. That Elisha then came to his brother's aid, and they were attempting to disarm Smith and save themselves from injury when the encounter ended. The record shows that Smith never lost possession of his weapons. These two appellants contended throughout the trial that they acted in self-defense, and denied that either of them called Smith a white s. o. b., or applied foul language to anyone else.

Error is assigned because the trial judge refused to grant the motions for a mistrial made by the defendants at various times during the course of the trial, when the sólicitor attempted and re-attempted, it is claimed, to weigh the testimony of Lisha Hariott and William Hariott against the testimony of Chief of Police, A. J. Rush, and D. T. Branham, both white men and witnesses for the state.

The exceptions raising this issue are based upon what occurred during the cross examination of the appellants, Lisha Hariott and William Hariott. When Lisha was being cross-examined, this took place:

"Q. Well, you heard Chief Rush, yesterday, say that Willie told him he was in the fight when he came back to the car, didn't you?

"A. No, sir, he wasn't.

"Q. You heard the Chief say that, didn't you?

"A. Yes, sir.

"Mr. Graydon: Just a minute, your Honor. That's attempting to make this defendant get in conflict with the Chief of Police. We think that's improper, and we object to it.

"The Court: What was the form of your question,

"The Solicitor: I asked him if he heard that yesterday.

"The Court: I think he can answer that question.

"The Solicitor: Since hearing the Chief say that your own brother said that, won't you tell us he was in the car?

"Mr. Graydon: Don't answer that. We ask your Honor to rule that question out. It has absolutely nothing to do with the case, and it's in direct violation of the rule of this court.

"The Court: In what way?

"Mr. Graydon: He is attempting to put his veracity up against the Chief of Police * * * 'Since hearing the Chief of Police's statement, won't you now say that your brother was in it?' We submit that's not fair.

"The Court: The question as to the veracity of the witness is a question for the jury * * * it is for them to determine, and I am going to sustain the objection.

"Mr. Graydon: Now, your Honor, for the fourth time, I ask your Honor to order a mistrial.

"The Court: I refuse the motion, Mr. Graydon."

At a later point on this cross-examination, the solicitor asked the following questions and received the following answers:

"Q. Well, you heard this gentleman (Branham) on yesterday, say that he saw Mr. Smith getting up from behind his car—did you hear that?

"A. Yes, sir.

"Q. Can you offer us any explanation, if he did see that, how he saw it, if you and he were not back there?

"Mr. Graydon: If your Honor pleases, I object again—the same objection—Mr. Taylor is attempting to draw the witness into a controversy with another witness, and I don't think it's proper.

"The Solicitor: Now, your Honor, I ask that my question be read (Question read by the Stenographer.)

"Mr. Graydon: Now, if your Honor pleases, we object. That's attempting to have this man say that the other man didn't tell the truth about it. He said that he didn't see it.

"The Court: Mr. Graydon, I think, that question he is asking him if he has any explanation as to how it could have happened if he wasn't back there, is proper, but I am not going to permit him to get into any controversy about the weight to be given.

"Mr. Graydon: Your Honor sees that I am in a very delicate position.

"The Court: I understand your situation. I will let him answer that question, if he can.

"The Solicitor: If this gentleman, Mr. Branham—if it's true that he saw this man, Mr. Smith, getting up from the back of his car, can you give these gentlemen any explanation of how Mr. Smith got back there, if the fight didn't take place back there?

"Mr. Graydon: Your Honor understands that that's subject to my objection.

"The Court: Yes, sir."

During the cross-examination of the appellant, William Hariott, the following interrogation was made by the solitor:

"Q. And Chief Rush came up there? You know the Chief here when you see him, don't you?

"A. Yes, sir.

"Q. And the Chief asked you 'Weren't you in that fight that took place out here?' You admit that much, don't you?

"A. I told him, 'No, sir, I wasn't in it.'

"Q. You told him, 'No, sir, I wasn't in it'?

"A. That's right.

"Q. Didn't you tell the Chief, sir—

"A. No, sir.

"Q. Well, how do you know what I am going to ask you?

"A. I am just telling you that I didn't tell him I was.

"The Court: Just wait until he gets through asking the question.

"The Solicitor: Didn't you tell the Chief, 'Yes, sir'?

"The witness: No, sir, I never said that.

"Q. Didn't you further tell the Chief—when he says, 'You are under arrest,' didn't you tell him, 'Well, I wasn't driving the car'?

"A. No, sir.

"Q. Did you make a statement there at all to the Chief about the automobile—about driving that automobile?

"A. No, sir, I went to the car to get the coat out of there and a lunch, and the Chief came up and asked me was I in this row along with my brothers, and I told him, 'No, sir, I wasn't there when it happened.' That's all I know. I don't know nothing else about it.

"Q. If the Chief is mistaken when he says that you told him you were, and that when he told you you were under arrest, you said, 'I wasn't driving the car,' can you offer any explanation of that—of where he could have heard it from?

"Mr. Graydon: We object, if your Honor pleases. That's the same difficulty we have been in all the way through, pitching this man's word against the Chief of Police. He says that he didn't say that, and we submit that's all he has to say.

"The Court: Yes, sir.

"The Solicitor: I asked him did he have any explanation for it?

"Mr. Graydon: Under the law, he doesn't have to have any. He says it didn't happen.

"The Court: Yes, sir, that's a matter for the jury to decide, as to where the truth lies. Go ahead and proceed."

In the recent case of *State v. Warren,* 207 S. C. 126, 35 S. E. (2d) 38, substantially the same question was presented, and it was held that cross-examination of the accused as to whether the sheriff had told the truth in previous testimony given by him for the State concerning statements allegedly made by accused while in jail was improper. But it was pointed out that exceptions could not be predicated upon continued pursuit by the solicitor of that line of examination after objection thereto had been sustained, in absence of a motion for a mistrial or a motion for a new trial predicated thereon.

In this case some of the objections to the evidence were sustained and some were not, and motions for a mistrial were several times made because of the alleged prejudicial character of the questions.

It is a rule of practically universal application in appellate procedure that an accused cannot avail himself of error as a ground for reversal where the error has not been prejudicial to him. Technical errors or defects, or mere irregularities which do not affect the substantial rights of the accused are generally disregarded on review by the appellate court, particularly where guilt appears from the record to be clearly established. *State v. Woods,* 189 S. C. 281, 1 S. E. (2d) 190.

Under the particular facts and circumstances of this case, it is our opinion that the continued pursuit of the cross-examination hereinabove quoted whereby the appellants, Lisha Hariott and William Hariott, were forced in effect to directly attack the veracity of the state's witnesses, Chief of Police Rush and D. T. Branham, was improper. The question then is, did prejudicial error result?

Whether the error in a given case shall be regarded as harmless on appeal may often depend on the circumstances of the particular case, rather than on any definite rules of law; the materiality and prejudicial character of the alleged error being determined in its relation to the entire case.

Accordingly, as heretofore stated, appellate courts are disposed to regard as harmless intervening errors, where it appears from the record that the conviction is clearly correct on the merits; that the accused had a fair trial, and where no other verdict could reasonably have been returned on the evidence. *State v. Evans,* 202 S. C. 463, 25 S. E. (2d) 492; *State v. Gilstrap,* 205 S. C. 412, 32 S. E. (2d) 163.

On the other hand, errors which might otherwise be regarded as harmless and unimportant may not be so considered in a close case—which an examination of the record shows this one to be.

The three appellants, who are negroes, were placed upon trial for assault and battery of a high and aggravated nature, which has been defined as follows in *State v. Jones,* 133 S. C. 167, 130 S. E. 747:

" 'Assault and battery of a high and aggravated nature,' is an unlawful act of violent injury to the person of another, accompanied by circumstances of aggravation, such as the use of a deadly weapon, the infliction of serious bodily injury, the intent to commit a felony, the great disparity between the ages and physical conditions of the parties, a difference in the sexes, indecent liberties or familiarities with a female, the purposeful infliction of shame and disgrace, resistance of lawful authority, and others."

And see to the same effect *State v. Johnson,* 187 S. C. 439, 198 S. E. 1.

The evidence in this case shows the presence of no deadly weapon, except in the hands of the prosecuting witness. Nor can it be said with any degree of certainty that an intention on the part of the appellants to commit a felony was shown.

The prosecuting witness testified that he was fifty-nine years old and weighed about 161 pounds. He stated that he was gassed in the Argonne in the first World War, and that the arches of his feet were weak. He also said that he had some trouble with his heart. On his own version, the conclusion may be drawn that he acquitted himself well in the fight even though outnumbered, and it may well be that none of his physical disabilities—except, perhaps his age—was apparent to the appellants.

The evidence was tenuous, but doubtless sufficient, by reason of the state's evidence as to disparity in the number engaged on each side, to take the case to the jury. While we are not prepared to say that the fist may not under some circumstances constitute an instrument which may inflict serious bodily injury, it is not generally regarded

as a deadly weapon. *Wilson v. State of Arkansas*, 162 Ark. 494, 258 S. W. 972, 33 A. L. R. 1182.

A close inspection of the record strongly disposes us to the view that the appellants could have been prejudiced before the jury by the cross-examination objected to. The evidence presented a close case as to whether appellants were guilty of assault and battery of a high and aggravated nature or simple assault and battery, or not guilty. And under all the circumstances we think a new trial should be granted. It will not be necessary to pass upon exceptions which raise other issues.

Judgment reversed.

BAKER, CJ., STUKES, TAYLOR and OXNER, JJ., concur.