**Christopher Anthony RANSOM, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 939.**

Supreme Court of Alaska.

Nov. 3, 1969.

Andrew E. Hoge, Anchorage, for appellant.

Douglas B. Baily, Dist. Atty., H. Bixler Whiting, Asst. Dist. Atty., Anchorage, for appellee.

Before DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

BONEY, Justice.

This case arises out of the same assault which is the subject of the appeal in Berfield v. State, Alaska, 458 P.2d 1008. Both Ransom and Berfield were convicted by a jury of assault with a dangerous weapon, i. e., their boots. Many of the issues raised by Ransom on appeal have been disposed of by this court's opinion in *Berfield;* however, there is one issue which has been raised by appellant Ransom which

requires that the appeals be considered separately.

Ransom was charged with assault with a dangerous weapon in a joint indictment which reads in part as follows:

That on or about the 8th day of July, 1967, at or near Anchorage, in the Third Judicial District, State of Alaska, Christopher Anthony Ransom and Lowell Bernard Berfield, being then and there armed with dangerous weapons, to wit, their boots, did willfully, unlawfully, and feloniously assault David Baker by kicking him about the head and shoulders with said boots.

Ransom asserts that the charge as described in the indictment was not proved at trial because there was no evidence that he was wearing boots at the time of the assault. The state's response to this claim of error is threefold: (a) there was sufficient evidence for a jury to conclude that Ransom was wearing boots; (b) the evidence at least showed that Ransom was wearing some kind of footgear and the difference between "footgear" and "boots" is not material; (c) since Berfield was wearing boots and both Ransom and Berfield were guilty as principals in the crime, it doesn't matter if Ransom was wearing boots or not.

██ The totality of the evidence concerning what Ransom was wearing on his feet at the time of the assault is contained in the testimony of one of the victims of the assault and is as follows:

Q Do you know what kind of en—footgear Ransom had on?

A No, I couldn't be sure.

* * *

Q As to Mr. Ransom, you're uncertain as to what footgear?

A Yes.

Q Let me ask you this, was he shod in some sort of footgear?

A Yes.

Q He wasn't barefooted?

A No.

* * *

Q Were you able to observe what Ransom was wearing?

A Not for sure.

Q Type of footgear?

A No, not for certain.

* * *

Q Did you observe any boots on Ransom?

A No, I didn't—I didn't even know what kind of footgear he had.

From this evidence it is clear that no reasonable person could conclude that the state had shown beyond a reasonable doubt that Ransom was wearing boots at the time of the assault.[1]

██ This evidence is also insufficient for us to conclude that the variance between "boots" and "footgear" is immaterial. It is true that many kinds of shoes could be considered the rough equivalent of boots. However, the state did not show that Ransom was wearing shoes; at best it was shown that he was not barefooted. One of the questions the jury was to answer was whether the "boots" of Ransom were dangerous weapons. Because of this required determination, the physical characteristics of Ransom's footgear cannot be considered immaterial. The term footgear could include such a variety of shoes, sandals, slippers and mukluks besides boots that we cannot see how a jury could reasonably decide whether Ransom's "footgear" was a dangerous weapon. We believe that bare hands and feet cannot ordi-

---

1. Susan Bailey testified for the defense. During her testimony the defense attempted to introduce into evidence the shoes that Ransom was wearing in the courtroom. Susan Bailey was asked on voir dire if she could positively identify the shoes as the ones Ransom was wearing at the time of the assault. She stated that she could not but that they looked like the same shoes. The shoes were not allowed in evidence nor were they described by the witness. We have no way of knowing if the entire jury saw the shoes which were offered as evidence, and we have no way to judge what kind of shoes were offered. The jury was instructed, of course, to only consider the exhibits which were in evidence.

narily be dangerous weapons.[2] It is true that a blow with a bare hand or foot can cause serious bodily injury under certain circumstances. However, since Alaska does not have an aggravated assault statute such a blow by an ordinary person must be classified as a misdemeanor assault.[3] If a person were wearing a soft leather glove a blow from his fist could still cause serious bodily injury; yet the possibility of injury would not be attributable to the use of the glove but rather to the fist itself. Such a case would still be a misdemeanor assault. For the crime of assault with a dangerous weapon to be shown, it must appear that the use of the weapon, rather than just the blow, had the capability of producing serious bodily injury considering the manner in which it was used. Thus, we believe that most types of ordinary wearing apparel cannot be dangerous weapons. Yet, under some circumstances a heavy-soled boot such as used in the *Berfield* case, could be a dangerous weapon. As we stated in *Berfield*, whether an object is a dangerous weapon depends upon the object's capability for harm considering the manner of its use. If nothing is known of the object's physical characteristics, its capability for harm cannot be reasonably determined.[4]

As the state's third point, it is claimed that both Ransom and Berfield were principals in the crime of assault with a dangerous weapon, namely, Berfield's boots. It appears uncontradicted that Berfield was wearing heavy, black "engineer" boots, and the state contends that Ransom aided and abetted Berfield's assault with his boots.

In Alaska the legislature has abolished the distinction between principals in the first and second degree and accessories before the fact.[5] Under a similar statute [6] federal courts unanimously agree that one indicted as a principal may be convicted of the crime on evidence which shows that he merely aided and abetted.[7] In those states that have abolished the common law distinction between principals and accessories before the fact, the same rule prevails. In People v. Ruscitti, 27 Ill.2d 545, 190 N.E.2d 314 (1963) the defendant was charged with armed robbery; he complained upon a writ of error that his companion committed the robbery and carried the gun. Defendant just drove the get-away car and took a share of the proceeds. The court held that

---

2. Wilson v. State, 162 Ark. 494, 258 S.W. 972, 33 A.L.R. 1182 (1924); State v. Calvin, 209 La. 257, 24 So.2d 467 (1945); People v. Vollmer, 299 N.Y. 347, 87 N.E.2d 291, 274 App.Div. 1011, 85 N.Y.S.2d 1 (1949); Bean v. State, 77 Okl.Cr. 73, 138 P.2d 563 (1943); State v. Hariott, 210 S.C. 290, 42 S.E. 2d 385 (1947). *Contra*, State v. Born, 280 Minn. 306, 159 N.W.2d 283 (1968).

3. We do not pass on the question of whether a professional boxer or karate expert, etc. should be judged by different standards.

4. There are some cases in which it is possible to infer from the nature of the victim's injuries that a dangerous weapon was used even though there is complete absence of evidence as to what the weapon was. However, such is not the present case. *See* State v. Farmer, 156 Ohio St. 214, 102 N.E.2d 11 (1951).

5. AS 12.15.010 provides:
   The distinction between an accessory before the fact and a principal, and between principals in the first and second degree is abrogated; and all persons concerned in the commission of a crime, whether they directly commit the ᵒact constituting the crime or, though not present, aid and abet in its commission, shall be prosecuted, tried, and punished as principals.

6. 18 U.S.C.A. § 2(a) provides:
   Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

7. Nye & Nissen v. United States, 336 U.S. 613, 618, 69 S.Ct. 766, 93 L.Ed. 919, 925 (1949); Theriault v. United States, 401 F.2d 79, 85 (8th Cir. 1968); United States v. Ramsey, 374 F.2d 192, 196 (2d Cir. 1967); Giraud v. United States, 348 F.2d 820 (9th Cir. 1965); Glass v. United States, 328 F.2d 754 (7th Cir.), cert. denied, 377 U.S. 983, 84 S.Ct. 1892, 12 L.Ed.2d 751 (1964); United States v. Provenzano, 334 F.2d 678 (3d Cir. 1964).

there was no variance although the defendant had been charged as a principal and was shown to be an accessory before the fact.[8]

In all of the cases we have found on this subject we have discovered no case in which the court failed to instruct the jury on the theory of accessorial liability. In every case where the subject of instructions is mentioned, it is noted that the jury was properly instructed that a particular defendant could be found guilty as a principal though he merely aided and abetted. We agree with these courts that in spite of an indictment charging a defendant as a principal, it is not error to instruct that under the facts of a particular case, a defendant may be guilty as an aider and abetter.[9]

The present case is distinguishable from the cases cited above, because in the present case the jury was not told that it could find Ransom guilty as an accessory to Berfield's assault with his boots. We hold that the failure to instruct on accessorial liability requires reversal of Ransom's conviction.

In the present case the court's instructions included a portion of the indictment which charged that Berfield and Ransom "armed with dangerous weapons, to wit; their boots, did * * * assault David Baker by kicking him * * * with said boots." Other instructions defined "dangerous weapon" and "assault". The jury was given the usual instruction that the state had to prove beyond a reasonable doubt all of the "material allegations and essential elements" of the crime of assault with a dangerous weapon. Nothing was said about aiding and abetting. Thus, according to the instructions the jury could

only convict Ransom if they found beyond a reasonable doubt that Ransom used his boots as dangerous weapons to assault the victim. As stated before we do not believe that a reasonable person could conclude that Ransom was wearing any boots at the time of the assault. We can only conclude that the jury's determination was erroneous as a matter of law.

Furthermore, we cannot sustain the conviction by finding on the appellate level that Ransom did aid and abet Berfield in his armed assault. It is not this court's function to make factual determinations which should have been made by the trier of fact at the trial. The jury could not have determined that Ransom was guilty as an accessory, because they were not asked to find him guilty on that basis. Such a determination would be necessary in order to uphold the conviction, but we cannot substitute our judgment for that of the jury and find Ransom to be an accessory. The evidence must be judged in light of the only theory presented to the jury. So considered, the evidence was insufficient as a matter of law. We therefore reverse the conviction and remand for proceedings not inconsistent with this opinion.

NESBETT, C. J., not participating.

RABINOWITZ, Justice (concurring in part, dissenting in part).

I cannot agree with the majority's holding that the evidence was insufficient to sustain appellant Ransom's conviction of the crime of assault with a dangerous weapon. I further disagree with the majority's conclusion that the government's proof resulted in a material variance between "boots," as charged in the indictment, and

8. *Accord:* Jacobs v. State, 184 So.2d 711 (Fla.App.1966); Bays v. State, 240 Ind. 37,. 159 N.E.2d 393, 399 (1959); State v. Johnson, Iowa, 162 N.W.2d 453, 455 (1968); State v. Dancyger, 51 N.J. Super. 150, 143 A.2d 753, 759 (1958) rev'd on other grounds, 29 N.J. 76, 148 A.2d 155, cert. denied, 360 U.S. 903,

79 S.Ct. 1286, 3 L.Ed.2d 1255 (1959); State v. Kimbell, 35 N.M. 101, 290 P. 792 (1930); People v. Henry, 18 A.D. 2d 293, 239 N.Y.S.2d 146 (1963).

9. For a sample instruction see W. Mathes and E. Devitt, Federal Jury Practice and Instructions § 8.06 (1965).

its evidence that Ransom was wearing "footgear."[1]

In my view our recent opinion in Berfield v. State[2] is controlling. There this court said in part:

> We agree with appellant that boots cannot be classified, as a matter of law, as dangerous weapons in themselves * * *.

Following this theme, *Berfield* further states that:

> Almost any object, depending upon its use or attempted use, is capable of or is likely to produce bodily harm. The test * * * is whether the object was so used that serious bodily harm may have resulted. The object's latent capability alone is not determinative. What is determinative is such capability coupled with the manner of its use.

In regard to Berfield's use of boots, we said in Berfield v. State[3] that:

> Appellant used his boots to kick Baker about the face and head. The boots were dangerous because they were used as something to fight with—as instruments of offensive combat. They were dangerous in these circumstances because their use was accompanied by the exposure or liability to serious injury to Baker's head and brain. The fact that such serious injury did not result is not controlling. It is enough that the manner that appellant used his boots to assault Baker was capable of producing serious injury.

I understand *Berfield* as focusing upon the manner in which an object is used. Berfield's boots were not dangerous weapons because the witness Brown described them as "engineer boots * * * real heavy black boots with a strap across the instep." His boots could be found to be dangerous weapons because they were used as "instruments of offensive combat" and be-

cause their use was "accompanied by the exposure or liability to serious injury to Baker's head and brain."

Study of the record shows that appellant Ransom used the footgear he was wearing in a manner similar to Berfield's use of his boots, i. e., as instruments of offensive combat, which use was capable of producing serious injury to Baker's head and brain. I am therefore led to the view that there was sufficient evidence in this record for the jury to reach the conclusion that Ransom's use of his footgear upon the person of Baker demonstrated that his footgear was used as a dangerous weapon under the circumstances.

On this record I am of the opinion that the jury had as much knowledge of the physical characteristics of Ransom's footgear as they did of Berfield's boots. Berfield's boots were never introduced into evidence. The witness Brown's description is the sole evidence as to the physical characteristics of the boots with which Berfield assaulted Baker. By virtue of the testimony of the sole defense witness, Susan Bailey, the jury had a basis for determining with some specificity the type of footgear, and physical characteristics thereof, that Ransom was wearing when he assaulted Baker.

I am also of the view that there was no variance between the indictment's allegations of "armed with a dangerous weapon, to-wit, their boots" and the state's proof that Ransom was wearing "footgear." Even assuming a variance, I do not view such variance as a material one in the context of this record. It is of significance that the issue of Ransom's guilt was not submitted to the jury on the theory of accessorial liability, but on the theory that he could be found guilty of an assault with a dangerous weapon even if he had been wearing only the shoes Susan Bailey claimed he was wearing at the time the events in ques-

---

1. I am in agreement with this court's holding that the trial court's failure to instruct on the subject of accessorial liability negates the possibility of affirmance of the judgment and commitment upon this alternative theory of the prosecution.

2. Berfield v. State, 458 P.2d 1008 at 1009 (Alaska, October 1, 1969) (footnotes omitted).

3. *Id.* at 1009 (footnote omitted).

tion occurred. In the course of his final argument, the prosecutor stated, in part, that it was the government's contention that:

Under these circumstances whether it be an engineer's boot or whether it be the kind of shoe that the defendant—each of them is wearing at this time; that that instrumentality under those circumstances is capable of inflicting extremely serious injury * * *.

* * * We contend that under these circumstances a pair of shoes, whether they be ordinary shoes or engineer's boots are an extremely dangerous instrumentality.

I have already indicated that I am of the opinion that no variance occurred and even if the proof resulted in a variance between "boots" and "footgear," such variance was immaterial. The term "boot" has been defined as "a covering for the foot and leg that is usually made of leather or rubber and is of varying height between the ankle and hip" and as "a shoe reaching to the ankle." [4] Guided by common usage, I am not persuaded that "footgear" or footgear as clarified by Susan Bailey's testimony, lies outside the definition of "boots." [5] Additionally, the indictment was definite enough to apprise Ransom of the offense with which he was being charged, to enable him to prepare his defense, and to furnish the basis for a plea of former jeopardy.[6]

I would therefore affirm the judgment and commitment which was entered by the superior court.

4. Webster's Third New International Dictionary Unabridged 254 (1966).

5. AS 01.10.040 provides in part:
   Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage.

6. Stewart v. State, 438 P.2d 387 (Alaska 1968); Price v. State, 437 P.2d 330 (Alaska 1968); Thomas v. State, 391 P.2d 18 (Alaska 1964).