No. 23440.

SAMUEL K. GRASS AND STEPHEN D. ROBERTS *v.* THE PEOPLE OF THE STATE OF COLORADO.

(471 P.2d 602)

Decided June 29, 1970.     Rehearing denied July 20, 1970.

EDWARD H. SHERMAN, Public Defender in and for the City and County of Denver, ROLLIE R. ROGERS, State Public Defender, THOMAS M. VAN CLEAVE, Assistant, for plaintiffs in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, for defendant in error.

*In Department.*

Opinion by Mr. Chief Justice McWilliams.

Samuel Grass and Stephen Roberts were convicted of the crimes commonly known as assault with a deadly weapon (C.R.S. 1963, 40-2-34) and conspiracy to commit an assault with a deadly weapon (C.R.S. 1963, 40-7-35). Grass was thereafter sentenced to a term of from one to five years in the state penitentiary on the assault charge, and to a term of from four to ten years on the conspiracy charge, the terms to be served concurrently. Roberts was sentenced to an indeterminate term in the state reformatory on each charge, his sentences also to be served concurrently.

By this writ of error both Grass and Roberts seek reversal of the convictions thus suffered. The basic position of both Grass and Roberts is that the evidence is legally insufficient to support their conviction on either of the two counts. Brief reference to the evidence adduced upon trial will serve to place the controversy in focus.

Grass and Roberts, along with several others, were driving along East Colfax Avenue in Denver in the early morning hours avowedly "looking for trouble." There was testimony to the effect that Grass and Roberts had both indicated that they wanted to fight "anybody they could find." The car in which Grass and Roberts were riding then came upon Hooper and his companion, who in the early morning hours were walking along Colfax Avenue near Quebec on their way back to Lowry Air Base. Grass and Roberts together with a third party got out of the car and accosted the pair, with the third party squaring off with Hooper's friend, as Grass and Roberts proceeded to challenge Hooper.

The testimony from several witnesses indicated that

without any provocation whatsoever Grass struck Hooper in the face with his fist. Roberts then grabbed hold of Hooper's arms and Grass proceeded to rain blows on Hooper. Hooper testified that as he fell to the ground he distinctly recalled Grass kicking him squarely in the face with his shoe. Hooper then lost consciousness and about his next real recollection is "coming to" in the hospital. Hooper testified as to the extent of his injuries, which included a broken nose and numerous lacerations around the mouth and under the chin. Hooper's companion suffered a broken jaw in the affray.

The driver of the vehicle in which Grass and Roberts were riding appeared as a witness for the People. He testified that after Grass initially struck Hooper in the face, Roberts "bent and grabbed him in the back, pulled him on the ground, and they started kicking him." He specifically stated that both Grass and Roberts kicked Hooper in the face as he lay inert on the ground. It was at this juncture in the proceedings that a passing motorist happened on the scene and summoned the police. Grass and Roberts then jumped in the car in which they had been riding and drove off. They were arrested a short time later by the police.

As indicated, the main ground for reversal is the contention that the evidence does not support the conviction of either defendant for either of the crimes of which they now stand convicted, namely, assault with a deadly weapon, or conspiracy to commit the same. We shall first concern ourselves with the assault charge.

C.R.S. 1963, 40-2-34 provides, in part, that an assault "with a deadly weapon, instrument or other thing" with an attempt to commit upon the person of another a bodily injury where no considerable provocation appears or where the circumstances of the assault show an abandoned and malignant heart, shall be adjudged to be a felony. Counsel argues here, as he did in the trial court, that the "kicking" of another with a shoe as a matter of law does not constitute an assault with a

"deadly weapon, instrument or other thing." Hence though Glass and Roberts may well be guilty of a very vicious assault and battery, concedes counsel, they could not as a matter of law be found guilty of an assault with a deadly weapon.

The learned trial court held that under the circumstances of the case it was a jury question as to whether a shoe was or was not a "deadly weapon, instrument or other thing" within the meaning of the assault statute. Accordingly, by instruction, the trial ·court generally advised the jury that a shoe was not in and of itself a deadly or dangerous weapon and that in determining whether an instrument, not inherently deadly or dangerous, assumes the characteristics of a deadly weapon the jury should consider the nature of the instrument or thing, the manner of its use, the location on the body of the injuries inflicted and the extent of such injuries. We agree with the trial court's handling of this matter.

This is apparently a matter of first impression in Colorado and admittedly there is some split of authority in other jurisdictions. The defendants rely strongly upon *Wilson v. State,* 162 Ark. 494, 258 S.W. 972, 33 A.L.R. 1182. In the *Wilson* case the majority held that an assault with a shoe was not an assault with a deadly weapon within the meaning of the Arkansas statute. It is to be noted that there was a strong and well-reasoned dissent in the *Wilson* case and this dissent would now appear to be the majority rule on the subject. Accordingly we quote from that dissent as follows:

"But the law does not read that an aggravated assault can be committed only with a deadly weapon. The statute reads as follows:

'If any person assault another with a deadly weapon, instrument or other thing with the intent to inflict upon the person of another a bodily injury where no considerable provocation appears, or where the circumstances of the assault show an abandoned and malignant disposition, he shall be adjudged guilty of a misdemeanor, and, on

conviction, shall be fined in any sum not less than fifty nor exceeding one thousand dollars, and imprisoned not exceeding one year.' Section 2334, C. & M. Digest.

"Certainly this testimony lacks no element of being an aggravated assault except that it was not committed with a deadly weapon. According to this testimony there was an intent to afflict a bodily injury upon the person of another, no considerable provocation appeared, and the circumstances of assault showed an abandoned and malignant disposition.

"But, as appears from the statute which I have quoted, aggravated assaults are not limited to those only which are committed with a deadly weapon. They may be committed with a deadly weapon, instrument, or other thing. It may be conceded that the rule of ejusdem generis applies, and that in its application the words, 'instrument or other thing' must be construed to mean some article or object which could be and was used as a weapon. To give these words, 'instrument or other thing,' less meaning would be to deprive them of any meaning. These words should therefore be construed to mean some object or article, which although not a weapon, was one which could be used and was used as such. How much more injury could be inflicted with knucks on one's hands than the toe and heel of one's shoe or boot?

"The use of a deadly weapon ordinarily indicates that the user had a purpose to inflict a bodily injury, because the weapon was intended for that purpose, and has no other use; but no court has ever held, so far as I am advised, that one cannot be guilty of murder unless he used some weapon designed to produce death in the commission of the homicide. Death or bodily injury can be inflicted not only with weapons, but with an infinite number of 'instruments or other things' when properly used to accomplish that purpose."

██ In line with the foregoing, we hold that certain weapons are by their very design and make so lethal in nature that a trial court should rule as a matter of law

that they are "deadly weapons." Other "instruments or things," though perhaps not "deadly weapons" per se, are within the meaning of our assault with a deadly weapon statute, depending upon the nature of the instrument and the manner in which the instrument or thing is used in accomplishing the assault.

██ As concerns the instant case, we perceive no error on the part of the trial court in submitting to the jury the issue as to whether the kicking of Hooper with a shoe by Grass and Roberts constituted an assault with a "deadly weapon, instrument or other thing." The jury has now determined that it was such an assault and there is ample evidence to support its determination.

█ In support of our determination that an assault with a shoe, depending on the manner in which the shoe is used, may constitute an assault with a deadly weapon, instrument or other thing within the meaning of C.R.S. 963, 40-2-34 see *Medlin v. United States,* 207 F.2d 33; *State v. Bradley,* 254 Iowa 211, 116 N.W.2d 439; *State v. Brinkley,* 354 Mo. 1051, 193 S.W.2d 49; *Smith v. State,* 79 Okla. 151, 152 P.2d 279; and *Jones v. Commonwealth,* 256 S.W.2d 520 (Ky.). Each of the above cases involved an assault with a shoe. Other cases bearing on this particular point are *State v. Spurlock,* 371 P.2d 739 (Okla. Crim.) and *Beeler v. State,* 334 P.2d 799 (Okla. Crim.).

The remaining ground for reversal is the contention that the evidence is insufficient to support the conviction of either Grass or Roberts on the conspiracy charge. Evidence bearing on this particular charge is: (1) the conversation in the automobile wherein Grass and Roberts indicated a desire to assault whomever they chanced to encounter; (2) the manner in which they thereafter assaulted Hooper, *i.e.,* Grass struck Hooper and Roberts held Hooper's arms, and then both kicked Hooper as he lay on the ground; and (3) both then fled the scene.

█ As was stated in *Smaldone v. People,* 103 Colo. 498, 88 P.2d 103:

"The evidence in proof of a conspiracy will generally,

from the nature of the case, be circumstantial. Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed in terms to have that design, and to pursue it by common means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of the same so as to complete it, with a view to the attainment of that same object, the jury will be justified in the conclusion, that they were engaged in a conspiracy to effect that object."

In *Abeyta v. People*, 156 Colo. 440, 400 P.2d 431, we commented as follows concerning the type of evidence necessary to support a conviction for conspiracy to rob: "Here the evidence shows that the four who took part in the robbery entered the store simultaneously; that each performed a given task toward the accomplishment of the robbery; and that all fled together. To decide that this evidence does not meet the test laid down in *Smaldone, supra*, would be to hold that the trial court should have ruled as a matter of law that the evidence showed no more than the four perpetrators of the robbery, individually determined to rob the store involved, and that, by some strange force of circumstances each entered the store to further his individual intent at the same time as did each of the other and independent of any of the others. To state the proposition is to show its utter tenuousness."

█ In our view the evidence in the instant case bearing on the conspiracy conviction fully meets the requirements laid down in *Smaldone* and *Abeyta*.

The judgment is affirmed in its entirety.

MR. JUSTICE DAY, MR. JUSTICE GROVES and MR. JUSTICE LEE concur.