STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. BESSIE BOYD AND ROBERTA CAWTHAN, PLAINTIFFS IN ERROR.

Submitted October 7, 1947—Decided March 9, 1948.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the state, *Duane E. Minard, Jr.,* Prosecutor of the Pleas.

For the plaintiffs in error, *Harold Simandl.*

The opinion of the court was delivered by

CASE, CHIEF JUSTICE.   On November 24th, 1945, Mildred Brown died at the Newark City Hospital of septic endometritis and peritonitis, ailments which had their source in the womb and were caused, in the opinion of the surgeon who performed the autopsy, by an abortion, either criminal, accidental or spontaneous.   Plaintiffs in error were indicted for and convicted of committing a criminal abortion upon Miss Brown, in consequence of which she died.   The entire record is returned.

The points presented are that the verdicts were contrary to the weight of the evidence, that the court erred in refusing at the close of the state's case and again at the close of the entire case to direct verdicts of acquittal and that the court further erred in a ruling on evidence and in charging the jury.

There is evidence that: Mildred Brown went with one Henry Sykes to the house of Mrs. Bessie Boyd on Eighteenth Avenue, Newark, New Jersey, on the evening of October 12th, 1945.   Sykes had been asked by a friend of Miss Brown

whether he knew "of anyone that did such a thing," and, making inquiry, he had been directed to that address. The couple saw and talked with Mrs. Boyd. Sykes told the latter that "Mildred was in trouble * * * and she wanted to be helped out." Mrs. Boyd said that it would cost $50 and that they should "come back the following day to see someone else that would commit this abortion," that Mildred would have "to come back tomorrow and speak to another person— another woman—'Shorty.'" Sykes and the young woman returned the next evening and again saw Mrs. Boyd who said that the other woman had not yet arrived but would definitely be there the next day and that "it would cost her $25 more—in other words it would cost her $75 to have this done." The next afternoon—Sunday—the two again called and "because Shorty hadn't arrived yet" went away and came back later in the evening. On the second visit Mrs. Boyd was there and "Shorty"—Mrs. Cawthan—was there also or came in presently. Mrs. Cawthan told Miss Brown that "it wouldn't be anything to hurt her," that it wouldn't take long and that if Miss Brown got sick "she would take care of her." Mrs. Cawthan also asked Miss Brown "how many months she was gone," to which the girl replied, "A few months." Mrs. Boyd withdrew, as did also Mrs. Cawthan and Miss Brown, and Sykes was left alone in the living room. After ten or fifteen minutes the young woman came back and left with Sykes. It appears that Miss Brown did not go to her home until a week from the following Tuesday, nine days, at which time she returned ill and bleeding. A physician was called, and the patient was removed to the City Hospital where she was found to be suffering from "incomplete abortion and septicemia," an incomplete abortion in which septic poisoning had set in. She died at the hospital a month later, as narrated above. The county medical officer who performed the autopsy was satisfied that the decedent had been recently pregnant.

Defendant Cawthan did not take the stand. Defendant Boyd denied the entire series of incidents in which she was said to have participated and undertook to prove an alibi which was severely shaken.

Without attempting a further particularization of the evidence, we express our view that the proofs at the close of the state's case and at the close of the entire case called for consideration by the jury, *State* v. *Sgro,* 108 *N. J. L.* 528; *State* v. *Bricker,* 99 *Id.* 521, and that the verdict of guilty may not be said to be so clearly against the weight of the evidence as to give rise to the inference that it was the result of mistake, passion, prejudice or partiality, *State* v. *Kellow,* 136 *Id.* 1; *State* v. *Tomaini,* 118 *Id.* 162.

The evidence is in part direct and in part circumstantial. The truth of Henry Sykes' testimony, as of all the testimony, was for the jury to determine. If the Sykes testimony was true, it is susceptible of no other rational interpretation than that Sykes went with Mildred Brown to the house of Mrs. Boyd for the purpose of obtaining an illegal operation of abortion upon Miss Brown and that an arrangement was made with Mrs. Boyd for the performance of the abortion at a fixed price, that Mrs. Boyd, in pursuance thereof, procured the presence of Mrs. Cawthan and that, in further accord with that arrangement, Miss Brown subjected herself, in private, to the ministrations of Mrs. Cawthan in co-operation with Mrs. Boyd for a purpose which involved the questions of likelihood of pain and of possible consequent illness and upon which the length of Miss Brown's pregnancy had a bearing and which, under all the proved facts of the case, could not reasonably have been other than the unlawful discharge of the foetus by instrument. The facts that Miss Brown was subjected to an abortion and that she died from an infection and bodily poisoning caused therefrom are clear. All of which, with the evidence left as it was, lead convincingly to the conclusion that the act was not only purposed but was done. The series of incidents involving Mrs. Boyd and Mrs. Cawthan are not otherwise explained. Mrs. Boyd denies them, which puts their existence at issue, but does not, if they occurred, explain them. Mrs. Cawthan did not testify as to any phase of the matter. We think that not only may the inference be drawn that Miss Brown was illegally aborted as charged but that such is the only inference reasonably to be drawn from the proven facts. A finding of guilt in a

criminal case may rest upon indirect or circumstantial evidence if that evidence be in quality sufficient to generate in the jurors' minds a belief and conviction of guilt beyond a reasonable doubt. *State* v. *O'Connor,* 134 *N. J. L.* 536, 539. When death ensues from an abortion there frequently is no means of establishing the ultimate fact of guilt except by resort to 'proof of circumstances.

We conclude, therefore, that the verdict was not contrary to the weight of the evidence and that the court did not err in refusing the motions for a verdict of acquital.

Defendants further complain that the court permitted this testimony by the witness Ulyses Richardson to remain in the record: "One day he [Sykes] stopped me on my way from work and asked me if I know a lady that do anything like that." The objection to the testimony came late; the only stated ground for the motion to strike was that the testimony was voluntary; the ruling, which struck all but the quoted sentence, apparently satisfied the objector; and the substance of the testimony was already in proof without objection. We think that the ruling did not constitute prejudicial error.

Defendant Boyd alleges error in the court's charge on the subject of alibi. The charge, in the part whereof defendant complains, closely followed the language of the Court of Errors and Appeals in *State* v. *Guarino,* 105 *N. J. L.* 549, 556, and in *State* v. *Kee,* 106 *Id.* 336, 338.

It is next said that the trial court gave erroneous and misleading instructions with regard to circumstantial evidence and erroneously refused to charge defendants' requests on that subject. The court, a few sentences before it entered upon the specific subject of circumstantial evidence, charged fully and adequately on the burden of proof and on reasonable doubt. The charge may be summarized as stating that (1) a conviction may be had on circumstantial evidence provided (2) the jury should first be satisfied (a) that the facts are sufficiently proved and (b) that the facts proved are explained or are explainable on no other rational conclusion than that the accused is guilty, (3) subject to the test that in the judgment of the jury the facts proved are not capable of being reconciled with the hypothesis of innocence; and the court

further charged (4) that the burden of proving guilt beyond a reasonable doubt is on the state and never shifts and that this burden is met when the jurors are brought to that state of mind wherein they feel an abiding conviction to a moral certainty of the truth of the charge. That, we think, constituted a lawful and sufficient charge on the subject-matter. The requests which the judge did not charge were that "mere suspicion or probabilities, however strong, are not sufficient basis for a conviction;" "if the circumstances can be reconciled with innocence the inference of guilt is not sufficient;" "if the circumstances make one inference just as reasonable as the other, the jury must give the defendant the benefit of the conclusion which is consistent with her innocence and she must be acquitted." The substance of these requests was covered by the charge, particularly since the charge properly stated the rule of reasonable doubt. *State* v. *Corrado,* 113 *N. J. L.* 53 (at *p.* 60).

Finally, it is contended that the court erred with respect to Bessie Boyd in refusing to charge a request submitted on her behalf as follows: "The failure of the defendant Mrs. Cawthan to take the stand should in no way reflect unfavorably on the defendant, Bessie Boyd." The effect of the non-appearance on the stand of Mrs. Cawthan was charged by the court to the jury as follows:

"The defendant Roberta Cawthan did not take the stand, and that creates a situation and involves a principle with which you should be familiar. Under our law a defendant is competent to testify and has a right to testify, but a defendant cannot be compelled to testify. Her failure to be a witness in her own behalf raises no presumption of guilt, but if facts are testified to which concern the acts of that particular defendant which she could by her oath deny, her failure to testify in her own behalf raises a strong presumption that she could not truthfully deny those facts."

The judge made clear that no one could compel Cawthan to testify and that the presumption which arose from her failure to testify in her own behalf had relation to her own acts and her own guilt. Presumption of innocence and the burden upon the state to prove guilt had already been cor-

rectly charged. We think that under the circumstances there was not prejudicial error in the refusal to charge the request as framed.

. The judgments below will be affirmed.