35 N.J. Super. 568 (1955)
114 A.2d 570
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARCO VITALE, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1955.
Decided May 27, 1955.
*569 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Benjamin Shanefield argued the cause for appellant (Messrs. Braff & Litvak, attorneys; Mr. Shanefield, of counsel).
Mr. C. William Caruso, Special Legal Assistant Prosecutor, argued the cause for the State (Mr. Charles V. Webb, Jr., County Prosecutor, attorney; Mr. Caruso, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant was tried and convicted in the Essex County Court before a judge sitting without a jury (defendant had waived trial by jury) of the crime of receiving stolen property, in violation of N.J.S. 2A:139-1, formerly N.J.S.A. 2:164-1. The indictment charged that on January 2, 1954, at Newark, defendant "did knowingly receive and have 1 safe of the value of $100.00, the goods and chattels of Economy Faucet Company, a corporation, before then stolen, * * *." Soon after conviction the court sentenced defendant to State Prison for a minimum term of *570 18 months and a maximum term of 4 years. He now appeals, claiming that (1) to sustain a conviction based entirely upon circumstantial evidence, the evidence must be consistent with defendant's guilt and inconsistent with any rational theory of innocence; the circumstantial evidence on which the State's case is based is as fairly consistent with defendant's innocence as it is with his guilt; (2) the verdict was against the weight of the evidence; (3) the court should have granted defendant's motion for judgment of acquittal at the close of the State's case; and (4) there was no proof of knowledge by defendant that the safe was stolen.
The State produced three witnesses to establish the crime: Crane, Caliendo and Scarpa. Crane, an officer of the Economy Faucet Company, identified the safe as the one stolen from the company premises sometime between December 31, 1953 and January 2, 1954. Caliendo and Scarpa testified they had stolen the safe and that shortly after the theft, between 12:30 and 1:00 A.M. on January 2, 1954, they transported it in their car to defendant's home, where all three opened it down in the basement.
Their testimony was to the effect that they rode around for some time after stealing the safe and eventually and without prearrangement went to Vitale's home and rang the doorbell until he came to the door some 15 minutes later. They told Vitale they had found the safe "down in the dumps" earlier that day and asked him to help them open it. He didn't believe their story and, in fact, asked if the safe were stolen. He said he "didn't want to get into trouble in nothing," he didn't "want to get involved." Caliendo and Scarpa had to repeat their story about finding the safe on the dumps four or five times; finally defendant, though still suspicious as to how they had obtained the safe, consented to their bringing it down into the cellar. All three carried the safe. Defendant provided the tools to break it open and he assisted in forcing the safe door. All three then examined the contents and found nothing of value. They then put everything back into the safe, replaced and closed the door, and carried the safe upstairs and out to the car. Repeating *571 earlier testimony, Caliendo stated that defendant was not sure whether the safe was stolen or found on the dumps; that he did not want to get into any trouble, and so defendant wiped the fingerprints off the safe before it was taken away. Caliendo and Scarpa subsequently threw the safe into the Passaic River, from which it was later recovered by the police.
Counsel for defendant cross-examined only Crane. At the close of the State's case he moved for judgment of acquittal on the ground that the State had failed to prove knowledge by defendant of the fact that the safe was stolen property, or that defendant had actually received or had possession of such property. The motion was denied. Defendant failed to take the stand or to offer any evidence in his own behalf. The court then found him guilty as charged and subsequently sentenced him to a term in State Prison.
Defendant first argues there must be specific evidence of knowledge that the article was stolen before there may be a conviction for receiving stolen property. His contention is that the conviction was based entirely on circumstantial evidence, and that to sustain it the evidence "must be consistent with the guilt of the defendant and inconsistent with any rational theory of innocence," citing State v. Donohue, 2 N.J. 381 (1949); State v. Elliott, 23 N.J. Super. 311 (App. Div. 1952); State v. Jusiak, 16 N.J. Super. 177 (App. Div. 1951); and State v. Fox, 12 N.J. Super. 132 (App. Div. 1951). The State counters with the argument that (1) the circumstances under which defendant received and had possession of the stolen safe are not only consistent with the theory of his guilt but also not fairly consistent with any theory of innocence; and (2) under the statute, N.J.S. 2A:139-1, the court was permitted to find defendant guilty on the basis that he had possession of the article less than one year from its theft and failed to submit proof that would exculpate him under any of the five exceptions set forth in the statute and mentioned hereafter.
The judgment of conviction must be affirmed. The State adduced evidence bearing upon defendant's knowledge that the safe had been stolen which can be classified as direct, *572 rather than circumstantial. And if the evidence bearing upon knowledge be regarded as circumstantial, that evidence was not consistent with any rational theory of innocence.
Initially, it is to be observed that there can be no question that the safe was stolen; the fact is admitted. This distinguishes the present case from State v. Fox, 12 N.J. Super. 132 (App. Div. 1951), upon which defendant relies, for the court there found that the proofs were consistent with the hypothesis that the property involved was not stolen. The only open question is defendant's guilty knowledge.
The safe was brought to defendant's home after midnight, taken to the cellar, and opened with tools provided by defendant. He participated in every stage of the affair from the time the safe was brought from the car until it was returned to it. There are two aspects of the evidence which we find important on the question of guilty knowledge. First, there was the proof that when the safe was brought to defendant's home he did not believe the story of the thieves about having found the safe on the dumps. He asked whether it was stolen. It was only after considerable persuasion and the assurance that he was not getting himself involved in trouble that he proceeded to help them open the safe. The court could infer from this testimony that defendant either knew the safe was stolen or had such a strong suspicion that such was the fact as, under the circumstances, to amount to knowledge or to warrant a finding by the court that he had such knowledge. Secondly, there was Caliendo's evidence that defendant wiped the safe off after they had finished examining its contents, "to be sure" his fingerprints were not left on it. This was direct rather than circumstantial evidence of defendant's knowledge that the safe was stolen. And, as already stated, even were the proofs considered circumstantial, the evidence of defendant's suspicions and of his having wiped the safe to remove any possible fingerprints, is not consistent with any rational theory of innocence.
We turn to the statute. N.J.S. 2A:139-1 has its source in the Crimes Act of 1898, L. 1898, c. 235, § 166, later amended by L. 1904, c. 193 and L. 1906, c. 226. Under that *573 act it was incumbent upon the State, where defendant was charged with the crime of receiving stolen goods, to establish three things: (1) that the goods were stolen; (2) that the accused received them; and (3) that at the time he received them he knew they were stolen. The language of the act was that defendant must have received the stolen goods "knowing the same to have been stolen * * *." The statute was supplemented by L. 1928, c. 187 and, as supplemented, became R.S. 2:164-1. This section was amended by L. 1938, c. 348, and in its amended form became N.J.S. 2A:139-1. The 1928 supplement and 1938 amendment eliminated the necessity of showing guilty knowledge by direct proof and provided, in its place, that proven possession of the stolen goods by the accused within one year from the date of the theft was to be deemed sufficient evidence to authorize conviction unless the accused established to the satisfaction of the jury either (a) that the goods were a gift, not received from a minor under the age of 16 years; or (b) that the amount paid for the goods represented their fair and reasonable value, and they were not received from such a minor; or (c) that the purchaser knew or made reasonable inquiries to determine that the seller was a regular dealer in such goods; or (d) and (e), that before or at the time of receiving the stolen goods, the accused reported the transaction to the local police authorities, and if they were received from a minor under the age of 16, obtained their approval of the transaction. In commenting upon the statute in its final form (then N.J.S.A. 2:164-1) the Supreme Court said:
"* * * The purpose of the aforesaid amendments is to dispense with affirmative proof of guilty knowledge and to substitute proof of possession by the buyer within one year of the theft, from which guilty knowledge may be inferred. In other words to create a presumption of guilty knowledge from the mere possession of stolen goods within the specified period." State v. Vigorito, 2 N.J. 185, 188 (1949).
In State v. Lisena, 129 N.J.L. 569 (Sup. Ct. 1943), affirmed per curiam, 131 N.J.L. 39 (E. & A. 1943), cited in the Vigorito case, the former Supreme Court said:
*574 "* * * We do not think that this statute eliminates the necessity of proof of guilty knowledge. Its purpose is to dispense with affirmative proof of such knowledge and to substitute proof of recent possession from which guilty knowledge may be inferred, and this is of course a fact issue for the jury. Lisena was not deprived of the right to explain his possession. He chose not to explain. He did not take the witness stand."
The constitutionality of N.J.S.A. 2:164-1 (now N.J.S. 2A:139-1) was upheld by our former Supreme Court in 1939, the year following the last amendment of the act, in State v. Giordano, 121 N.J.L. 469, which cited numerous supporting decisions, some of them by the United States Supreme Court. The case was not taken to the Court of Errors and Appeals. However, that court held the statute constitutional in State v. Todaro, 131 N.J.L. 430 (1944), affirming 131 N.J.L. 59 (Sup. Ct. 1943). The United States Supreme Court dismissed the appeal. 323 U.S. 667, 65 S.Ct. 73, 89 L.Ed. 542 (1944). And see the recent Note in 55 Columbia L. Rev. 527, "Constitutionality of Rebuttable Statutory Presumptions." We do not consider the constitutional question  first, because defendant does not raise it, and second, we consider ourselves bound by our decisional law.
As in the Lisena case, above, defendant failed to take the stand or to offer any evidence whatsoever. In deciding defendant was guilty the court did not have to rely merely on suspicious circumstances. Suspicion alone is not enough to support a conviction. However, the cases clearly hold that suspicious circumstances may be part of the circumstances from which knowledge may be inferred. State v. Jusiak, 16 N.J. Super. 177, 181 (App. Div. 1951), where the court quotes from State v. Goldman, 65 N.J.L. 394, 398 (Sup. Ct. 1900). Here we have more than suspicious circumstances; we have evidence indicating an actual belief by defendant that the safe was stolen.
Defendant insists that the judge's finding of guilty was against the weight of the evidence. We do not agree. On the basis of the evidence adduced by the State, in no way contradicted or neutralized by evidence offered on behalf of *575 defendant, we hold that the court properly concluded he was guilty of the crime charged.
Affirmed.