46 N.J. Super. 313 (1957)
134 A.2d 738
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANDREW BULNA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 4, 1957.
Decided September 20, 1957.
*314 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. David Cohn argued the cause for defendant-appellant (Mr. Stanley J. Mann, on the brief).
Mr. Thomas O'Brien argued the cause for plaintiff-respondent (Mr. Guy W. Calissi and Mr. Frank J. Cuccio, attorneys).
*315 The opinion of the court was delivered by CONFORD, J.A.D.
Defendant appeals from a conviction upon an indictment charging the forging of an assignment of a certificate of ownership of an automobile owned by Mary Bulna to one John Bowman with intent to "prejudice, injure, damage, and defraud the said Mary Bulna," contrary to N.J.S. 2A:109-1. Mary Bulna is the defendant's wife.
By the end of the presentation of the State's case the following factual situation had been developed. Andrew and Mary Bulna were husband and wife, living together with their children in Clifton until December 1955. They then separated, she going to live in Passaic and he with his mother in East Paterson. (Testimony by the defendant was that he took custody of the three older children and she of the youngest.) The records of the State Motor Vehicle Division show that title to a 1950 Dodge automobile was taken in the name of Mary Bulna in March 1956 and that Mary Bulna assigned title to the car to one John Bowman, of 267 Union Street, Hackensack, on July 27, 1956. This is the assignment alleged to have been forged by the defendant. On the same day a certificate of ownership was issued to John Bowman at the Haledon (Passaic County) agency of the Motor Vehicle Division.
Mrs. Swintek, a sister of Mary Bulna, testified that Mary had spoken to her on the phone July 26, 1956, saying she had to go "to court" that day "on a case about the children, about support"; also that at about 9:30 P.M. on July 27, 1956 she phoned the defendant to inquire if he had seen Mary and that he said she had been at his place, slept over (apparently the night before), and left early in the morning. Mrs. Swintek said she phoned the defendant again the next day, July 28, 1956, to inquire about Mary and that defendant stated that Mary had phoned him after Mrs. Swintek's call the night before "and said that she was coming to his house to pick up her little boy."
A Mrs. Trebowski testified that Mary visited with her "for about a month before she disappeared." Mary was not seen or heard from after July 28, 1956. Mrs. Trebowski said she *316 last saw her at 11:00 P.M. July 26, 1956, when she left in her car with the youngest child.
On July 28, 1956 the Dodge automobile in question was found by the police parked on the street in East Paterson three or four blocks from the home of the defendant. No one claimed the car. Investigation of the public motor vehicle records disclosed the registration in the name of John Bowman, but an inquiry at his supposed Hackensack address revealed that no person by that name lived there. No John Bowman was ever identified as owner of the car or otherwise in connection with the case.
Early in August 1956 the Bergen County Prosecutor's office received a complaint that Mary Bulna was missing. The defendant was invited by a detective in that office to submit samples of his handwriting, and he did so voluntarily. These were submitted for study and analysis to Francis D. Murphy, a handwriting expert, along with other authenticated specimens of defendant's and of Mary Bulna's handwriting. Murphy testified that he studied and compared these, in the original and in enlargements, all of which were introduced in evidence. He gave it as his opinion that the writings on the assignment of certificate of ownership of the car and on the sample specimens voluntarily supplied by defendant were in the hand of the same person; but that the former and the writing on the authentic Mary Bulna specimens were not. Particularizations of similarity and difference were given in detail by the witness.
No other proof of defendant's alleged forgery of the certificate was submitted. Nor was there any direct proof of any exercise of possession or dominion by the defendant over either the car or the registration certificate. The State did not identify defendant as the person who appeared at the Haledon agency in connection with the assignment or the issuance of the new registration in the name of Bowman. Defendant moved, unsuccessfully, for dismissal at the end of the State's case and at the end of the entire case. He asserts on appeal that the State failed to prove his guilt beyond a reasonable doubt, and, in particular, that in respect *317 to the necessary element of the offense of intent to "prejudice, injure, etc. Mary Bulna," the proof was lacking in the strength requisite to warrant submission to a jury.
We deal first with the proofs going to the alleged forgery. These were in our opinion sufficient. The jury had before it not only the well-explained opinion of a qualified expert but also the specimens from which he drew his conclusions. From these the jury was justified in concluding, as its verdict shows it did, that defendant was the writer of the controversial assignment of certificate.
We acknowledge greater difficulty in respect to the sufficiency of the proofs respecting intent to prejudice or damage Mary Bulna, as charged in the indictment. Here the proof, even assuming as a fact the defendant's forgery of the certificate, is entirely circumstantial. The specific intent impliedly charged against the defendant is, presumably, the conversion or misappropriation of the car contrary to the assent of the owner, Mary Bulna. It is held that where the proofs of the State are circumstantial, and, at the end of its case, "reasonably and fairly" make for a hypothesis of innocence, there should be an acquittal, notwithstanding that an inference of guilt is also possible. State v. Pincus, 41 N.J. Super. 454, 459 (App. Div. 1956); State v. Fox, 12 N.J. Super. 132, 137 (App. Div. 1951); and see State v. Rhams, 14 N.J. 282, 285 (1954). Even the much stronger criterion that the evidence must not alone be consistent with the defendant's guilt but must exclude every reasonable hypothesis of innocence (or "except that of guilt") is to be found expressed in the cases. See the Fox and Rhams cases, supra, at the pages indicated; State v. Donohue, 2 N.J. 381, 390 (1949). As an abstract theory of sufficiency of proof, this doctrine is widely held. 1 Underhill's Criminal Evidence (5th ed. 1956), § 17, p. 20, et seq.; 23 C.J.S. Criminal Law (1940), § 907c, p. 149. However, an unfortunate misapprehension of the Fox case, supra, as calling upon the trial judge or an appellate court to dictate an acquittal in a case based upon circumstantial proof if the court does not believe the evidence excludes *318 every reasonable hypothesis of innocence, even though a jury might, has taken wide root in the trial bar. But a careful reading of State v. Donohue, supra, and State v. Boyd, 137 N.J.L. 23, 26 (Sup. Ct. 1948), affirmed 137 N.J.L. 615 (E. & A. 1948), both cited in the Fox case as authority for the broader rule for exculpation, particularly the Boyd case, makes it clear that the rule is one for application by the jury, under proper instructions, and no sound conclusion can be drawn from these authorities that the court must acquit under that formula if its own view, favorable to the defendant, as to the effect of the proofs in excluding every reasonable hypothesis of innocence, differs from that which a jury might debatably entertain. State v. O'Shea, 28 N.J. Super. 374, 378 (App. Div. 1953), affirmed 16 N.J. 1 (1954). In view of the infinite variety of factual settings in which criminal liability is susceptible of establishment only by circumstantial proof and of the wide range of degree of probative force which such proof may generate, it appears unwise to attempt formulaic generalization beyond the flexible statement of the rule found in the Pincus case, supra, and a reminder of the statement by former Chief Justice Case in the Boyd case, supra (137 N.J.L. at pages 25, 26) that "a finding of guilt in a criminal case may rest upon indirect or circumstantial evidence if that evidence be in quality sufficient to generate in the jurors' minds a belief and conviction of guilt beyond a reasonable doubt."
Applying the rule of the Pincus case, supra, to the facts at the end of the State's case, and assuming as a fact that defendant made out and signed his wife's name to the certificate, we are not satisfied that the proofs so firmly sustain a hypothesis of innocence of criminal intent that a jury could not properly find to the contrary. The very act of forgery itself will be sufficient to imply an intent to defraud in the context of the circumstances of the particular case. State v. Redstrake, 39 N.J.L. 365, 369 (Sup. Ct. 1877). The forgery by defendant of this certificate to a fictitious person and the consequent registration of the car in that name would give rise to the natural inference that *319 the defendant intended to convert the car or its value to his own use. Only by assuming that these acts were done with Mary Bulna's consent can they be given an innocent face. But, on the evidence submitted on the State's case, there is no reasonable and fair foundation for that inference. When last seen, Mrs. Bulna had driven off with the car.
If defendant asks the court to sustain the hypothesis of innocence of fraudulent intent on the basis of the added information elicited in the course of the defense proofs, he must accept the adverse as well as the favorable inferences arising therefrom. In addition to denying the forgery or his presence at the Haledon agency on July 27, 1956, he testified that he was with Mary in court on July 26, 1956 for about a half-hour and that she came to see him with their youngest child at 11:00 P.M. that evening (other references in the printed transcript are to July 27, 1956 as the date, but July 26, 1956 seems the date intended); that she told him she was pregnant and asked him for money so that she might go away for an abortion, which he refused; and that she left that night in "her own car," leaving the baby with him. He heard from her only once again, on July 28, 1956. He did not relate the circumstances or what she said. There is nothing in this recital to permit an inference of an arrangement between defendant and Mary contemplating his effecting an assignment of title to the car by forging her name. Defendant's failure to offer such an explanation bespeaks its lack of foundation. Cf. State v. Boyd, supra, 137 N.J.L. at page 25.
We conclude that the issues both of commission of the forgery and of intent to prejudice or injure Mary Bulna thereby were for the jury.
Defendant urges that his cross-examination of the expert witness, Murphy, was materially hampered by the trial court in a number of respects. We have carefully examined the testimony, and, having in mind such factors as the rightful discretion of the trial court, the intelligibility of some of the questions excluded, the extent of the cross-examination actually permitted, and the merits of the *320 particular rulings challenged, we find no prejudicial error except in one respect.
On two occasions counsel for defendant sought to confront the expert with other genuine specimens of Mary Bulna's handwriting not then in evidence, once for the purpose of testing the witness' opinion as to the identity of the writer thereof with the writer of the disputed assignment of certificate, and once to test his opinion as to whether two such specimens were written by the same person. Objections to these efforts were sustained by the court on the sole ground that the testing documents were not "within the realm of his (witness's) direct examination." It is true that counsel's purpose was not too clearly articulated in the questions to the witness excluded at the trial, but the trial court refused to hear an explanation of counsel's purpose. When it is considered that the testimony of this expert was practically the only evidence which the State was able to offer in substantiation of defendant's guilt of the forgery and that little substantiation of the essential criminal intent was available other than the fact of the forgery, if established, it becomes obvious that any material hampering of defendant's right of cross-examination of this witness must be accounted prejudicial.
Although present-day courts no longer subscribe to the quondam view that the opinion testimony of handwriting experts is a low order of evidence and to be accorded little evidential weight, Morrone v. Morrone, 44 N.J. Super. 305, 312 (App. Div. 1957); 7 Wigmore on Evidence (3rd ed. 1940), § 1998, p. 188, nevertheless reason and authority suggest that the weight of that kind of evidence may well depend upon "the clearness with which the expert demonstrates his correctness," Gordon's Case, 50 N.J. Eq. 397, 422 (Prerog. Ct. 1882); 7 Wigmore, op. cit., supra, p. 190; cf. State v. Hauptmann, 115 N.J.L. 412, 434 (E. & A. 1935). There is wide judicial contrariety of viewpoint concerning the propriety of testing the qualifications of a handwriting expert by showing him writings other than those concerning which he testified on direct examination *321 and asking him whether they were made by the same hand as the writing in issue, or, whether writings shown to him during the test were made by one or more hands. Annotation, 128 A.L.R. 1329 (1940). Sometimes such tests are ruled out as raising collateral issues or multiplying the issues. Ibid., at page 1331. The potentiality of such a test easily demolishing the pretenses of an unqualified or dishonest expert leads Wigmore to espouse it vigorously, even where proof aliunde is necessary to authenticate the testing specimens used. 7 Wigmore, op. cit., supra, § 2015, p. 213. Professor McCormick says anent this subject:
"It seems that any one who claims to be an expert should be subject to a testing of his claim on cross examination by presenting him with true and fabricated writings and asking him to distinguish. Since in fairness he may properly request time for examination and testing, the Judge should have a discretion to say whether under the circumstances the test is worth the time it will take." McCormick, Evidence (1954), § 172, p. 367.
Wharton's view is that full cross-examination in this respect should be allowed. 2 Wharton, Criminal Evidence (12th ed. 1955), § 525, p. 355. A reasoned approach to the problem is reflected in the opinion in Hoag v. Wright, 174 N.Y. 36, 66 N.E. 579, 581, 63 L.R.A. 163 (Ct. App. 1903):
"While the court may properly restrict such evidence, it should not exclude it altogether. The good sense of the trial judge will confine it within proper bounds, and prevent an unnecessary consumption of time."
It is readily to be seen that the administration of a test of this kind requires the exercise of skill on the part of counsel and firm supervision by the trial court in order that its obvious benefits not be purchased at the expense of undue distraction of court and jury from the issues or unwarranted delay of the trial. Yet, when a man's liberty is at stake it would seem not an inordinate demand upon the capacities for administrative flexibility of a jury trial at least to permit his counsel to begin so potentially illuminating a test of a *322 state expert witness as that summarily denied the defendant here as to the most important state witness in the case. The court's action in the present case was taken without any attempt to see whether the test could be concluded expeditiously and without undue confusion. The law holds high the value to and right of a defendant in a criminal case of full cross-examination of the witnesses arrayed by the State against him. State v. Curcio, 23 N.J. 521 (1957); cf. State v. Orecchio, 16 N.J. 125, 129 (1954). Cross-examination should be allowed to extend to anything which is relevant to show the improbability of the direct evidence. 3 Wharton, op. cit., supra, § 861, p. 242.
As to the trial court's reliance upon the fact that the testing specimens were not in evidence in the State's case, the very efficacy of such a test derives from the fact that the witness has not already identified the writer of the testing specimens from extrinsic information and so can be tested on the basis of the inherent characteristics of the writing itself. To have confined such a test in the present case to specimens already in evidence, the origin of which the witness knew, would have been useless. Nor did it appear that the authenticity of the proposed testing specimens was a matter of probable doubt. If such a question had been raised, the court could have decided upon an appropriate course in its discretion.
Under all the circumstances, particularly the heavy dependence of the verdict of conviction upon the testimony of the expert, Murphy, we are of the conviction that the disallowance of any cross-examination whatever for the purpose proposed by defendant was a material curtailment of his rights, calling for a new trial as a matter of substantial justice.
Other asserted errors are argued in respect of the charge of the court to the jury and as to alleged prejudicial "over-zealousness" of the prosecutor. We find these points without merit but do not discuss them in view of the conclusion already arrived at.
Reversed and remanded for a new trial.