51 N.J. Super. 150 (1958)
143 A.2d 753
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARVIN DANCYGER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1958.
Decided July 3, 1958.
*152 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Samuel Allcorn, Jr., argued the cause for appellant (Messrs. Goodell and Allcorn, attorneys).
Mr. Myron W. Kronisch, Legal Assistant Prosecutor, argued the cause for respondent (Mr. Charles W. Webb, Jr., Essex County Prosecutor, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a County Court judgment entered upon a jury verdict, sentencing him to a term of three to five years in State Prison for larceny of a ring.
On October 8, 1956 the Essex County grand jury returned an indictment in three counts charging that on July 30, 1956 defendant (1) willfully entered the room of one Estelle Grossbardt with intent to steal, in violation of N.J.S. 2A:94-1; (2) stole a platinum diamond ring belonging to her valued at $2,750, and (3) stole another of her rings, worth $500, both in violation of N.J.S. 2A:119-2. At the outset of the trial the court granted the prosecution's motion to sever the third count, and the cause thereafter proceeded on the first two counts  entering with intent to steal, and larceny of the platinum diamond ring.
The evidence disclosed that the complaining witness, Mrs. Estelle Grossbardt, was a guest at Goldman's Hotel, a resort hotel in West Orange, New Jersey, during the 1956 summer vacation period. She was accompanied by her two children, aged ten and two, and their "governess," a girl of 17 or 18. Mr. Grossbardt joined his family on weekends. During her stay at the hotel Mrs. Grossbardt and her children  and her husband on weekends  all occupied the same room, while the "governess" occupied a separate room. The Grossbardt room *153 was located on the ground floor of the hotel. Access to the room was off a central corridor which led in one direction to the main lobby at the front of the hotel and in the other direction to a side door opening onto the parking lot and also to a door in the rear leading to the swimming pool area.
Mrs. Grossbardt had brought with her a quantity of her personal jewelry, consisting of a platinum diamond ring, charm bracelet, cultured pearls, wrist watch and other items. She kept this jewelry in an unlocked jewel box on top of her dresser. The door of her room was never locked except when she was inside asleep.
Mrs. Grossbardt testified that on Sunday evening, July 29, she wore some of her jewelry, including the platinum diamond ring and the charm bracelet. When she returned to her room in the early hours of Monday, July 30, she placed this jewelry in the unlocked box on the dresser and went to sleep. At about 11 A.M., after Mr. Grossbardt had departed for the city, the room was left empty and unlocked. Mrs. Grossbardt did not look into her jewel box again until 7 o'clock the next evening, Tuesday, when she discovered that all her jewelry was missing.
It was proved that the charm bracelet was pawned at a pawnshop in New York City on Monday, July 30, between 3:30 and 4:30 P.M. The State's handwriting expert, comparing the name signed on the pawn ticket, "Max Doreshorne," with samples of defendant's handwriting, testified that in his opinion they all were written by one and the same person. The clerk who actually handled the pawn transaction was not called as a witness by the State, although he was still employed at the pawnshop and his name and address were known to the police. Instead, the assistant manager testified as to the fact and time of the pawn.
The evidence further showed that on Tuesday, July 31, between noon and 1 P.M., defendant entered a jewelry store in Poughkeepsie, New York, ownd by Morris and Rae White, showed Mrs. White a platinum diamond ring he said he had found lying in the street, and asked whether the stone was glass or diamond. She took the ring to her husband at the *154 rear of the store and he, being suspicious, instructed her to call the police. They soon arrived and requested defendant to accompany them to police headquarters where, in response to their questioning, he informed them he was employed as a salesman by a pipe and tobacco company and had been making calls on his customers in Poughkeepsie that morning, and that as he crossed the street he saw a shining object in the gutter, picked it up and took it into the jewelry store to see if it had any value. Mrs. Grossbardt identified this ring, as well as the charm bracelet, as her property.
As defendant had told the police, he was a salesman for a New York City company engaged in the importing and wholesaling of pipes and smokers' articles. The State introduced order slips showing that on Monday, July 30, defendant had taken orders from four different customers, three located in Newark and one in East Orange, New Jersey. The prosecution offered no proof, however, of the time of day when the respective orders were taken or the means of transportation then being used by defendant.
Accepting as true the testimony of Mrs. Grossbardt that her hotel room was not empty until 11 A.M. Monday, and the fact that her charm bracelet was pawned between 3:30 and 4:30 P.M. that same afternoon, the obvious conclusion is that her jewelry must have been taken between those hours and transported to New York City. The only evidence placing defendant at the scene of the crime was the testimony of Maclyn Goldman, one of the owners of the hotel, and Herbert Fine, who described himself as in charge of athletic and social programs there.
Goldman's testimony essentially was that the person appearing in a photograph which had been shown him by the police prior to the trial  it was stipulated that this was a police photograph of defendant  had been a dinner guest at the hotel a week or two before July 30, 1956. However, when he looked at defendant in the courtroom he was not so sure of his identification; he said that defendant resembled someone he had seen at the hotel, but whether defendant himself had been there he did not know. When *155 the trial resumed in the afternoon the witness was again shown defendant's police picture, and he then testified that he had seen the man in the picture in and about the hotel within a week or two of the date in question. On cross-examination he stated that he could not say the person in the photograph was the man he had seen at the hotel. He said that defendant bore a very strong resemblance to the man he had seen, but when asked directly, "Is he or is he not the man," he replied "I can't answer that question, sir." The rest of Goldman's testimony concerned the number of guests at the hotel on a summer weekend, 500 to 600; the fact that there were 150 to 170 employees on the weekend of the robbery, 30 to 40% of them "new faces"; that there were three exits out of the hotel from Mrs. Grossbardt's room, and the windows in her room could be opened from the inside.
Fine testified that he had seen defendant in the lobby of the hotel during the summer of 1956, but when asked to give the month he replied he could not. The State's attorney then said he had no further questions, but when defense counsel moved to strike Fine's testimony as being too remote in time and not connected, he resumed direct examination. Upon further probing by rather leading questions, to which no objection was entered, the time the witness said he saw defendant in the hotel lobby was narrowed to a Saturday night between July 15 and July 30. He could not recall just what Saturday night it was, but it was after 8 P.M. He remembered the time, so he explained, because at that hour every one not a guest at the hotel would be asked to leave preparatory to the evening show in the hotel's night club. Fine remembered seeing defendant wandering alone through the main lobby, but he could not recall how he was dressed and he did not tell him to leave. Although the general practice was to question a person who was not a guest, Fine did not stop or question defendant on that particular evening.
At the close of the State's case defendant moved to dismiss both counts of the indictment because of the State's failure to make out a prima facie case. The motion was *156 denied. Defendant did not take the stand; his wife was his only witness. She testified that she worked in New York City and defendant had picked her up at her place of employment every Saturday evening during the summer of 1956 and then spent the entire evening with her. Upon the completion of her testimony defendant again, unsuccessfully, moved for a judgment of acquittal. The court then charged the jury, stating that the case was one founded in circumstantial evidence and directing that it could return a verdict of guilty or not guilty on both counts, or guilty on one and not on the other. In concluding he made the comment, which he said the jury was not required to accept, that it seemed to him that under the facts of the case "the verdict should be either guilty on both counts or not guilty on both counts."
The jury could not agree on the first count (entering with intent to steal), and a mistrial was declared as to it. It returned a verdict of guilty on the second count (larceny). Defendant moved for a new trial because the verdict was contrary to the weight of the evidence and the court erred in not granting his motions for acquittal; the verdict was inconsistent and a compromise verdict; there was trial error in the admission of the police photograph and a police fingerprint chart, and there were errors in the charge. The motion was denied.
On appeal defendant claims that (1) the evidence does not support the larceny charge and the motions for judgment of acquittal should therefore have been granted; (2) the trial court's charge with respect to defendant's failure to testify was erroneous; (3) he was prejudiced by the improper admission of evidence and the improper remarks of jeweler White, who testified for the State; and (4) the verdict was inconsistent and a compromise verdict. After the completion of the oral argument we requested both sides to file supplemental briefs covering the following points:
(1) On the hypothesis that defendant had an arrangement with someone in Goldman's Hotel to steal jewelry (not necessarily the jewelry in this case) and then turn it over to *157 him for disposal, would such an arrangement, followed by the disappearance of the jewelry which occurred in this case, if assumed to be a theft, make defendant guilty of the offense as an accomplice or accessory either before or after the fact?
(2) Assuming that the circumstantial proof was not sufficient for submission to the jury of the hypothesis of defendant's guilt of personal theft, is the theory set out in (1) a sufficiently probable hypothesis from the facts proven so as to have warranted submission of the issue of defendant's guilt to the jury?
(3) Is the foregoing a sufficient basis to sustain a conviction where the indictment charged theft but did not charge defendant as an accomplice or accessory, and where the trial court did not submit to the jury the theory of defendant's guilt as an accomplice or accessory?
The evidence against defendant was entirely circumstantial. The exacting standard that the State must meet in such a case was laid down by the Supreme Court, speaking through Justice Wachenfeld, in State v. Donohue, 2 N.J. 381, 390, 391 (1949), where it was said:
"* * * In order to justify a conviction on such evidence, all of the circumstances not only must concur to indicate a defendant's guilt but they must also be inconsistent with any other rational conclusion. It is not enough that they coincide to render probable the hypothesis advanced by the prosecution; they must also exclude beyond a reasonable doubt every other hypothesis except that of guilt * * * Where the essential facts are proved, and where they cannot be rationally explained on any theory other than that the defendant is guilty of the crime charged, such circumstantial evidence will be considered as convincing as evidence of a direct and positive character."
And see State v. Rogers, 19 N.J. 218, 232 (1955); State v. Rhams, 14 N.J. 282, 285 (1954); State v. Pincus, 41 N.J. Super. 454, 459 (App. Div. 1956); State v. Vitale, 35 N.J. Super. 568, 571-572 (App. Div. 1955); State v. Williams, 16 N.J. Super. 372, 383 (App. Div. 1951); State v. Fox, 12 N.J. Super. 132 (App. Div. 1951). In State v. Bulna, 46 N.J. Super. 313, 317 (App. Div. 1957), *158 affirmed 27 N.J. 93 (1958) without further discussion of this point, we said that "where the proofs of the State are circumstantial, and, at the end of its case, `reasonably and fairly' make for a hypothesis of innocence, there should be an acquittal notwithstanding that an inference of guilt is also possible," at the same time pointing out that the much stronger criterion found in cases like Donohue, Rhams and Fox was a doctrine widely held.
Viewing the evidence adduced by the State in its most favorable light, it was proved that the jewelry was stolen on Monday, July 30, 1956, between 11 A.M. and 4:30 P.M. (the disappearance of property from the place where the owner put it, without the owner's knowledge or consent, is evidence of theft, 32 Am. Jur., Larceny, § 136, p. 1047, and note 8 (1941)); on the day of the alleged theft defendant had taken orders in Newark and East Orange which, it may judicially be noticed, are some miles removed from Goldman's Hotel in West Orange; the charm bracelet was pawned that same afternoon in New York City (which also may be noted as being well over a dozen miles away by the most direct route), and the handwriting expert testified that defendant had signed the pawn ticket; the day following the theft defendant was found in possession of the platinum diamond ring in Poughkeepsie, New York; and defendant apparently had been seen in Goldman's Hotel within several weeks prior to the time of the theft.
We recognize that defendant's recent possession of the Grossbardt jewelry was a circumstance to be considered by the jury, and in connection with other evidence could raise an inference or rebuttable presumption of his guilt of their theft. State v. Lax, 71 N.J.L. 386 (Sup. Ct. 1904); 1 Wharton's Criminal Evidence (12th ed. 1955), § 135, p. 254; 9 Wigmore on Evidence (3rd ed. 1940 and 1957 Supp.), § 2513, p. 417; 32 Am. Jur., Larceny, §§ 140-143, pp. 1052 et seq. (1940); 52 C.J.S. Larceny, §§ 105-110, pp. 924 et seq. (1947). This rule must, however, be applied within the context of the principle set out in the Bulna, Rogers, Donohue and other cases cited above, which protects *159 a defendant who is subject to conviction on circumstantial evidence alone. We have here, under the rule of recent possession just stated, a situation where the facts proved are consistent with an hypothesis of defendant's guilt of the crime charged. But the test of the Bulna line of cases is two-pronged: the evidence must also exclude the possibility of reasonably and fairly arriving at a conclusion of innocence. For the reasons about to be stated we have concluded that the proofs in the instant case, purely circumstantial as they were, did not exclude a reasonable hypothesis of innocence of the theft charged, so that the trial court should have granted defendant's motions for acquittal.
Although there are several possible explanations of defendant's possession of the missing Grossbardt jewelry that are consistent with his innocence of its theft, the one that instantly comes to mind, and the most probable, is that the person who actually got possession of the jewelry by larceny or otherwise delivered the items to defendant for disposal. If this was the case, defendant would be guilty of receiving stolen property, N.J.S. 2A:139-1, and not of its theft. We note in this connection that the statute provides that mere possession of property within one year from the date that it was obtained by theft, robbery, or otherwise unlawfully or fraudulently, "shall be deemed sufficient evidence to authorize conviction," unless the accused show to the satisfaction of the jury that it was a gift not received from a minor under 16, or that he paid a fair and reasonable value for it and that it was not received from a minor under 16, or that he bought it from one in a regular and established business for dealing in such property, or that he reported the transaction to the local police at the time of such receiving or buying, or that where the property was obtained from a minor under 16, he communicated with the police and obtained their approval. Thus, N.J.S. 2A:139-1 itself raises a strong but rebuttable presumption of guilt of receiving stolen goods, a significant consideration in a circumstantial case like this where defendant was charged with larceny.
*160 A receiver of stolen goods is guilty of a distinct, substantive offense. He is not an accessory to the theft, nor to a prior receiving or possessing of the stolen property. The thief and the receiver are not accomplices. State v. Vanderhave, 47 N.J. Super. 483, 486 (App. Div. 1957); State v. Fox, 12 N.J. Super. 132, 138 (App. Div. 1951); State v. Gaddis, 131 N.J.L. 44, 46 (Sup. Ct. 1943); State v. Rachman, 68 N.J.L. 120, 122 (Sup. Ct. 1902); State v. Calvin, 22 N.J.L. 207, 209 (Sup. Ct. 1849). We perceive, of course, the seeming paradox of holding defendant innocent of the criminal charge of theft because it would be entirely reasonable and fair to conclude that he is guilty of another crime  receiving stolen property. Our duty, however, is to decide the issue of defendant's guilt or innocence of the crime with which he has been charged in the indictment, larceny. We cannot usurp the functions constitutionally allocated to our law enforcement officials and the grand jury. 1947 Const., Art. I, par. 8. We are bound by the decisions which for more than a century have held theft and the receiving of stolen property to be entirely separate and distinct offenses. Since an indictment for larceny will not support a conviction for receiving stolen property, the probability of defendant's guilt of the latter and innocence of the former calls for reversal in the factual setting here present.
We are not concerned here, as the dissenting opinion suggests, with any rule for admeasuring the sufficiency of circumstantial evidence to sustain a conviction for larceny. The question, plainly and simply, is whether the Donohue principle, quoted above, is to be put to one side on a suspicion (or even a firmly held conviction) that defendant was in some way guilty of infracting the criminal law. We do not sustain convictions merely because of the presence of an aura of criminality. There should be no predilection to send a defendant to jail for larceny, or accessory to larceny, where the proofs leave open the very definite probability that he was a receiver of stolen goods and therefore innocent of the crime charged  and this no matter how accurately the rule on circumstantial evidence may have been charged to the jury.
*161 We are constrained to note that the evidence would seem to supply a much greater support for the charge of receiving stolen property than for its theft. There was no direct evidence placing defendant at or immediately near the hotel premises on the day of the alleged theft nor, indeed, was it actually proved that defendant was in the State of New Jersey during the hours when the theft must have been committed. Further, the evidence identifying defendant as having been at the hotel within the two weeks preceding the disappearance of the jewelry was greatly vitiated by the effort expended in extracting this modicum of proof from the witnesses. We deem it entirely likely, in view of the obvious size and popularity of the hotel, its large staff and the appreciable employee turn-over, especially on weekends, that the one who took the jewelry must have been familiar with the Grossbardt family and the habits of Mrs. Grossbardt with respect to her valuables. That person entered her hotel room when it was empty, and there was no evidence that anything other than the jewelry box was disturbed. Everything points strongly toward this having been an "inside job," and that defendant's role was that of a "fence."
The pawning of the jewelry under an assumed name, the Poughkeepsie charade, the possible presence of defendant at the hotel sometime earlier that summer, his presence in Newark and East Orange at an unspecified hour and in an unspecified conveyance on the day the jewelry disappeared  all mentioned in the dissent  do not destroy the probable explanation of defendant's having been a receiver. Nor does the fact that the bracelet was pawned within some four or five hours after the hotel room was left empty. The facts definitely permit the inference that whoever took Mrs. Grossbardt's valuables knew that defendant was available, or would readily be available, at a place in New York City (or indeed New Jersey) to receive what he had for disposal. We cannot jump the factual gap, left open by a total absence of proof, that this made defendant an accessory to a theft.
Our determination above is dispositive of the questions posed by us following the oral argument and discussed *162 in the supplemental brief. There can be no question but that defendant would be an accessory and accomplice, and punishable as a principal, if he had aided, commanded, induced or procured another to steal Mrs. Grossbardt's jewelry. N.J.S. 2A:85-14; State v. Cooper, 10 N.J. 532, 568 (1952); State v. Seaman, 10 N.J. Super. 439 (App. Div. 1949), certification denied 6 N.J. 456 (1951). Aside from the fact that the record does not substantiate either directly or by inference an hypothesis that defendant had an arrangement with any one at the hotel or elsewhere to steal jewelry from hotel guests and to dispose of it through him, the reasonable hypothesis of guilt as a receiver, discussed above, would exclude his conviction as an accomplice or accessory to the theft. Additionally, the case was tried on the single theory that defendant himself had entered the hotel room and had removed the jewelry, and this is reflected in the court's comment that the verdict should be guilty on both counts or on neither. We note, further, that the jury was not charged on the theory that defendant was an accomplice or accessory. Had there been sufficient proof to submit the case to the jury on the latter theory, assuming there was no problem insofar as receiving stolen property is concerned, the indictment charging him as a principal would, of course, have been sufficient. State v. Ellrich, 10 N.J. 146, 151 (1952); State v. Kuznitz, 36 N.J. Super. 521, 530-531 (App. Div. 1955); State v. Seaman, above, 10 N.J. Super. at pages 444-445; State v. Wilson, 80 N.J.L. 467 (E. & A. 1910), affirming 79 N.J.L. 241 (Sup. Ct. 1910); 4 Wharton's Criminal Law and Procedure, §§ 1789, 1791, pp. 610, 613 (1957). The fact remains, however, that the State's evidence reasonably and fairly made tenable the hypothesis that defendant was a receiver, and therefore innocent of the crime charged, whether as principal or accessory to the larceny.
In view of our disposition of the case, it is unnecessary to discuss the other grounds of error raised by defendant. Reversed.
*163 CONFORD, J.A.D. (dissenting).
I am constrained to dissent, with deference, from the conclusion of the majority for reversal and acquittal. I am persuaded that the evidence here justifies affirmance of the conviction.
If the jury credited the testimony of the handwriting expert which tended to establish that the defendant had pawned one of the stolen pieces of jewelry in New York City the day of the theft, it was entitled to find that the defendant was in possession of some of the stolen articles within hours or minutes after they were taken. Moreover, he was undeniably shown to be in possession of one of the articles the next day in Poughkeepsie, New York.
The overwhelming weight of authority is that the recent possession after larceny of stolen goods warrants the inference that the possessor was the thief, or, at least, that coupled with other inculpatory evidence, a jury verdict of guilt based thereon will be sustained. 52 C.J.S. Larceny §§ 105-110, pp. 924, 935, and the other authorities for these propositions cited in the majority opinion. Literally scores of cases are cited for these rules in these works. In State v. Lax, 71 N.J.L. 386, 387 (Sup. Ct. 1904), the court approved the rule that the possession by the defendant of stolen goods "at a time not too long after the stealing, is a circumstance for the jury to consider and weigh in connection with the other evidence [on the issue of guilt of theft]." In State v. Dunlap, 103 N.J.L. 209 (Sup. Ct. 1927), the court sustained a conviction of larceny based largely upon the circumstantial evidence of possession of the stolen goods shortly after their theft where it might also have been argued, as does the majority here, that the evidence pointed also to the hypothesis of guilt of receiving; and see State v. Janiec, 20 N.J. Super. 471, 481 (App. Div. 1952).
It has been held in those jurisdictions where possession alone is not sufficient that slight inculpatory evidence additional to that of recent possession of stolen goods will suffice to sustain a conviction. Examples thereof are the giving of false explanations of possession, People v. Crotty, 70 Cal. *164 App. 515, 233 P. 395 (Ct. App. 1925); People v. Farrell, 67 Cal. App. 128, 227 P. 210 (Ct. App. 1924), or selling the property under an assumed name, People v. Lang, 142 Cal. 482, 76 P. 232 (Sup. Ct. 1904), or other conduct with respect to the goods betraying or evidencing "a guilty mind." State v. Kinghorn, 109 Mont. 22, 93 P.2d 964 (Sup. Ct. 1939); and see McCutcheon v. State, 140 Tex. Cr. R. 74, 143 S.W.2d 611 (Cr. App. 1940) (selling property under an assumed name); and see State v. Janiec, supra (20 N.J. Super. at page 481). In the present case there was the pawning of some of the jewelry under an assumed name, the fantastic explanation to the Poughkeepsie jeweler of having found one of the pieces in the street, the evidence of defendant having been seen on the hotel premises during the summer, and the proof of his presence in Newark and East Orange on the day of the theft. Most damaging is the proximity in time between the period when the jewelry was stolen and the hour the same day when defendant was pawning one of the articles in New York City. The shorter the period of time between theft and possession by the defendant the stronger the justification for the inference of theft. 52 C.J.S. Larceny § 109, p. 934, note 47.
The majority assert that the rule of inference of guilt from recent possession must be applied "within the context of the principle" set out in the Bulna, Rogers and Donohue cases cited in their opinion concerning the sufficiency of circumstantial evidence. I would suggest, rather, that when the accumulation of judicial experience in the review of convictions of a particular type of crime distills a specific rule, widely applied, for admeasuring the sufficiency of circumstantial evidence to sustain a conviction of such a crime, the general rules of sufficiency of evidence should be applied with deference to the special applicability of the particular rule. And so here.
But even were we here to apply literally the Bulna rule requiring an acquittal on appeal if the proofs "reasonably and fairly make for a hypothesis of innocence" of the crime charged, I cannot agree with the conclusion of the majority *165 that such a determination is called for in this case because of the asserted predicate that the most probable explanation of defendant's possession of the jewelry if it was stolen is that he received it from the thief without being himself implicated in the theft; and that where the circumstantial proofs point to a crime other than that charged there must be an acquittal. As already noted, the defendant was in possession of at least one of the articles the same day and within less than four hours after they were taken. In my judgment there is a much stronger basis for belief that, if he did not personally steal the jewelry, he was in complicity with another who did, which would justify his conviction as a principal on the hypothesis that he was an accessory in the crime. N.J.S. 2A:85-14; State v. Western Union Telegraph Co., 12 N.J. 468, 495 (1953). The mere fact that the evidence would justify an inference of receiving cannot derogate from the effect of the proofs in permitting the stronger inference of stealing, directly or indirectly. Cf. State v. Giordano, 121 N.J.L. 469, 472 (Sup. Ct. 1939). The majority opinion, while accepting the hypothesis of receiving, rejects the tenability of the hypothesis of theft on the basis that there is a "total absence of proof" thereof. But it is obvious that there is no more direct proof for one theory than the other. There is a circumstantial foundation for either.
I fear that in their quotation from State v. Donohue, 2 N.J. 381, 390, 391 (1949), the rule requiring the State in a circumstantial evidence situation to "exclude beyond a reasonable doubt every other hypothesis except that of guilt," and using it as a guide for appellate action, the majority have lost sight of our caveat in State v. Bulna, 46 N.J. Super. 313, 317, 318 (App. Div. 1957), that this is a rule to be charged the jury, not a rule by which a trial or appellate court may properly undertake itself to admeasure the proofs and thereby determine whether the defendant should be or should have been acquitted. State v. Boyd, 137 N.J.L. 23, 26 (Sup. Ct. 1948), affirmed 137 N.J.L. 615 (E. & A. 1948). The correct rule is explicitly stated *166 by Judge Clapp in State v. O'Shea, 28 N.J. Super. 374, 378 (1953), affirmed 16 N.J. 1 (1954), by Mr. Justice Case in the Boyd case, supra, and by Judge Daniel J. Brennan in an opinion adopted by the Supreme Court in State v. Rhams, 14 N.J. 282, 285 (1954). I am persuaded that the conversion of the rule from one to be charged for the guidance of the jury to one for the admeasurement of the proofs for sufficiency on a motion for acquittal, or by an appellate court on review of a conviction, see State v. Fox, 12 N.J. Super. 132, 137 (App. Div. 1951), is not a sound conception and operates to put the judge in the jury box, as well as to place an intolerable handicap on the State in criminal cases based upon circumstantial evidence. It is functionally as wrong as it would be to say that in a civil case a judge should direct a verdict for the defendant if he himself finds from his own examination of the evidence that the plaintiff did not sustain his burden by a preponderance of the credible proofs. I do not believe that the holdings or the opinions in State v. Donohue, supra, and State v. Rogers, 19 N.J. 218, 232 (1955), are contrary to the views herein expressed.
The rule under discussion was appropriately and correctly charged to the jury in the present case, substantially in the language of the Donohue and Boyd cases, and in the context of the pervading principle that the defendant must be found to be guilty beyond a reasonable doubt. This done, the requirements of the cases were satisfied. So long as we are satisfied that there was a basis for the inference of guilt, and that reasonable minds might differ as to whether it should be drawn consistently with the requirements of finding proof beyond a reasonable doubt and the special rule of excluding every hypothesis except that of guilt, the function of drawing or rejecting the inference was exclusively for the jury.
I find no basis for reversal in any of the other assertions of trial error by the defendant and I would therefore affirm.